JENNIE SULTAN v. PENNSYLVANIA RAILROAD COMPANY.

(Filed 2 October, 1918.)

1. **Railroads — Negligence — Evidence—Sleeping Cars, Pullman—Nonsuit—Trials.**

    Where it is alleged—and plaintiff's evidence tends to show—that the damages sought in an action against a railroad company was caused by the defendant's failure to furnish sleeping-car accommodation, a ticket for which the plaintiff had bought and paid the defendant's proper agent, a motion for judgment as of nonsuit is properly denied.

2. **Pleadings — Evidence—Variation — Railroads—Sleeping Cars, Pullman—Appeal and Error—Prejudicial Error.**

    Where there is general allegation and evidence that the plaintiff was made sick, etc., by the failure of the defendant railroad company to provide sleeping-car accommodation between Washington and Richmond, on transportation to a town in this State, for which its agent at Baltimore had issued a Pullman ticket, it is reversible error for the trial judge in this State, without amendment of pleadings, to reopen the case after the close of the evidence, and allow further evidence to be introduced in plaintiff's behalf tending to show that the station agent in Baltimore refused to allow the plaintiff to take an earlier train from Baltimore, which would have put him in Washington in time to make connection with the train on which his reservation had been made, and which had left before his

arrival there, the effect being to substitute a new cause of action for that alleged, and to the defendant's substantial prejudice.

**3. Instructions—Issues—Consolidated Actions—Evidence—Contradictions— Appeal and Error—Reversible Error.**

Where two actions are consolidated and tried together, by consent, and submitted to the jury on one set of issues, and the evidence in one of these actions, as to the negligence alleged and the damages, is materially different and contradictory of the evidence in the other action, a charge to the jury thereon, without distinction, is reversible error.

CLARK, C. J., and HOKE, J., dissenting, without opinion.

APPEAL by defendant from *Allen, J.,* at February Term, 1918, of CRAVEN.

These two actions, consolidated and tried together, by consent, were brought against the Pennsylvania Railroad and the Pullman Company by Nita Williams and Jennie Sultan to recover damages because of failure to provide each of the plaintiffs a berth on a Pullman car from Washington, D. C., to Goldsboro, N. C.

The evidence for the plaintiffs tended to prove that they were in Baltimore on business on 16 February, 1917, and on that day bought of the agent of the railroad a railroad ticket to New Bern, N. C., to be used on the night of 17 February, and at the same time bought a Pullman berth from Washington to Goldsboro, on car R-30; that they went to the station at Baltimore about 6:30 o'clock on the evening of the 17th, but did not reach Washington until after the car on which they had bought a berth had left for Richmond; that they continued their journey to Richmond on a Pullman, having a section to themselves, which was not, however, made up for sleeping, and that at Richmond they were given their berths on car R-30; that they suffered humiliation, inconvenience, caught cold, etc.

The evidence for defendants tended to prove that berths were reserved for the plaintiffs on car R-30; that the plaintiffs did not get the berths at Washington because they were not there before the leaving time of car R-30, which was 9:30 o'clock, and that five or six trains left Baltimore for Washington after 6:30 o'clock, when the plaintiffs said they reached the station in Baltimore in time to have taken the plaintiffs to Washington before car R-30 left.

The evidence then closed, and there was a motion for judgment of nonsuit, which was allowed as to the Pullman Company and denied as to the railroad, and the defendant railroad excepted.

The plaintiff then asked the court to reopen the case and permit the examination of the plaintiffs about the gateman at the railroad station in Baltimore refusing to let them through the gate at Baltimore.

The court reopened the case, to which ruling the Pennsylvania Rail-

road Company objected and excepted, and Miss Jennie Sultan then testified:

"We went down to the station to get our train, and went to the gate about 6:30 to get our train. The man at the gate looked at our tickets and told me the train was late. We went to the gate two or three times, until there came a train, and he told us that was our train; that is the train we took. We remained there, watching the gateman. He told us what gate we were to go through. We waited there an hour and a half.

"I knew there were a number of trains going to Washington. I went to the man two or three times with that knowledge. I knew this ticket was good to Washington. We could have gone to Washington on any one of those trains if we could have gotten through the gate."

The defendant excepted to all of this evidence.

The jury returned the following verdict:

1. Did the plaintiff purchase from the defendant railroad company a ticket which entitled her to transportation over its lines and its connecting lines from Baltimore to New Bern, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, at the same time, purchase from said railroad company a ticket which entitled her to a berth upon a car of the Pullman Company from Washington City to Goldsboro, as alleged in the complaint? Answer: Yes.

3. Did the defendant railroad company negligently fail to furnish the plaintiff the berth on the Pullman car from Washington City to Richmond, Va., and damage and injure the plaintiff, as alleged in the complaint? Answer: Yes.

4. What damage, if any, is plaintiff entitled to recover? Answer: $150.

Judgment was entered in favor of the plaintiffs, and the defendant railroad appealed.

*D. L. Ward for plaintiffs.*
*Moore & Dunn for defendant.*

ALLEN, J. The motion for judgment of nonsuit could not have been allowed, because the evidence of the plaintiffs, unexplained by the evidence of the defendant, shows a failure to furnish berths from Washington to Goldsboro, as the defendant had agreed to do, which is the cause of action alleged in the complaint, and, "On motion for nonsuit, only the evidence of the plaintiff, and that in the light most favorable to him, can be considered." *Smith v. Electric Co.,* 173 N. C., 493.

The plaintiffs were, however, impressed by the evidence of the defendant tending to prove that five or six trains left Baltimore after they

reached the station, in time for them to go to Washington and take their berths; and knowing that this evidence, if accepted by the jury, would defeat a recovery if they had the opportunity to take these trains, they asked, after the close of the evidence, that the case be reopened, and they were permitted, under these conditions, to offer evidence that the gateman at Baltimore would not permit them to take the earlier trains—a cause of action entirely different from the one alleged in the complaint, and one which placed the defendant at a decided disadvantage, as the action was being tried in New Bern and the evidence of the gateman, which might have been used in rebuttal of the evidence of the plaintiffs, was at Baltimore, more than 300 miles distant.

This evidence of the plaintiffs was objected to by the defendant, and we must hold it was incompetent because not supported by any pleading, because "It is a settled maxim of law that proof without allegation is as unavailable as allegation without proof." *McCoy v. R. R.,* 142 N. C., 386.

"A defendant is called upon to answer the accusations made against him, but he is not called upon, and it would be unreasonable to do so, to anticipate and come prepared to defend any other accusation" (*Moss v. R. R.,* 122 N. C., 891)—a principle intended to give both parties a fair and equal opportunity to be heard, which is not enforced when it appears that the party has not been misled by the variance (*Watkins v. Mfg. Co.,* 131 N. C., 536), but which is peculiarly apposite here, as it appears that the evidence of the defendant to meet a new phase arising in the trial of the action was in Baltimore and not accessible for the purposes of the trial.

The materiality of this evidence is further demonstrated by the charge, in which the liability of the defendant is made to depend altogether on the conduct of the gateman at Baltimore, as follows:

"If they went to the station and remained there, waiting for a train they knew to be too late, when they had opportunity to take other trains which would put them there in time, they could not recover.

"If the jury believes the evidence in this case, there were several trains leaving Baltimore for Washington after the plaintiff had reached the station, either one of which they could have taken and reached Washington before 9:30; and if they had opportunity to take this train or any one of them, and failed to do so, with the opportunity to do it, then their failure to take one of those trains would be negligence on their part and not on the part of the railroad company, the burden being on the plaintiffs to satisfy the jury by the greater weight of the evidence that they were detained there by the negligence of the railroad company."

We are also influenced in our decision and inclined to give effect to the principle requiring allegation as well as proof, because the two actions

were treated as identical, the same charge being given on all the issues, without discrimination as to the law or the contentions of the parties, when there was a radical difference, as disclosed by the evidence of the plaintiffs.

The plaintiff Nita Williams testified:

1. "I took the first train for Washington after I got to the station."

2. "We paid for a Pullman section and got one in Washington. We did not ask the porter to make that down for us. I was sick. We did not ask anybody to make it down for us, and nobody disturbed us in it."

3. "Had a night's rest from Richmond. I don't think I moved."

The plaintiff Jennie Sultan testified:

1. "I know there were a number of trains going to Washington. I went to the man two or three times with that knowledge. I knew this ticket was good to Washington. We could have gone to Washington on any one of those trains if we could have gotten through the gate."

2. "I asked him to make our berths down to Richmond, and he said 'No.'"

3. "I don't think I had fifteen minutes sleep the whole night."

These contradictions were material on the issues of negligence and damages, and required the application of different principles in separate charges.

For the reasons stated, a new trial is ordered.

New trial.