## SMITH BUILDERS SUPPLY, INC., v. JAMES D. DIXON.

### (Filed 1 May, 1957.)

**1. Evidence § 8: Payment § 9—**

Where defendant admits the amount due on a claim as asserted by plaintiff, the burden is upon defendant to prove his affirmative defense of payment or his counterclaim alleged as justification for his failure to pay.

**2. Evidence § 36—**

Accounts and ledger sheets prepared in the usual course of business and properly identified, are competent in evidence, and their introduction renders harmless any error in the admission of testimony of a witness in regard thereto prior to the introduction of the ledger sheets in evidence.

**3. Trial § 17½—**

The court has discretionary power to reopen a case and admit additional evidence, and where it is apparent that defendant's request for instructions was based upon testimony as to entries on ledger sheets relating not only to matters during the period in controversy but also, through inadvertence, to matters prior thereto, the action of the court in reopening the evidence and permitting the introduction of the ledger sheets limited to those entries relating to the period in controversy, will not be held for error.

**4. Pleadings § 24—Under plaintiff's general denial of a counterclaim, as distinguished from affirmative defense thereto, plaintiff is not limited to transactions specifically alleged.**

Where defendant sets up a counterclaim based upon plaintiff's refusal, in violation of contractual obligation, to accept lumber cut by defendant, without specifying lumber cut from any particular tract, but defendant's evidence in support of the counterclaim is explicit that the counterclaim was based upon plaintiff's refusal to accept lumber from a specified tract, defendant may not complain that plaintiff's evidence, under a general denial of the counterclaim in the reply, related to plaintiff's refusal to accept, for failure to meet specifications, lumber cut from other tracts, and defendant's contention that he was taken by surprise by the evidence of unacceptability of lumber cut from other tracts, is untenable, the scope of the inquiry not being so limited either by defendant's counterclaim or plaintiff's reply thereto.

**5. Trial § 31g—**

Appellant's assignment of error to the charge as to the credibility of witnesses overruled on authority of *Styers v. Bottling Co.*, 239 N.C. 504.

APPEAL by defendant from *Bundy, J.,* November Term, 1956, of NEW HANOVER.

Plaintiff's action was to recover on two causes of action: *first,* to recover a balance of $253.44, with interest, allegedly due for goods, wares and merchandise sold and delivered by plaintiff to defendant between 7 June, 1946, and 13 January, 1947; and *second,* to recover a

balance of $357.14, with interest, allegedly due by defendant to plaintiff on account of advancements of money made by plaintiff to defendant between 6 December, 1946, and 8 May, 1947.

Answering, defendant admitted that the item of $253.44 was a correct charge against him, but denied that he owed said sum, "for it has been more than paid and offset by other items in other amounts owed by the plaintiff to the defendant." Except as stated, defendant denied the essential allegations of the complaint.

"AND FOR A FURTHER DEFENSE, SET-OFF AND COUNTERCLAIM," defendant alleged:

> "The plaintiff agreed with the defendant to pay the defendant $50.00 per thousand for lumber which the defendant was to cut and deliver to the plaintiff, on a certain tract of land; and the defendant under that agreement cut a large quantity of timber into lumber and delivered the same to the plaintiff, and was continually cutting and sawing trees into lumber for the plaintiff's account, and under that contract, when suddenly and without warning the plaintiff refused to accept deliveries and to pay the defendant, when there was 47,000 feet of lumber cut, and continued to refuse to accept the deliveries and put the defendant off from time to time until said lumber ruined and became worthless; and by said wrongful breach of said agreement and contract, the defendant has lost the $50.00 per thousand for said lumber, amounting to $2350.00, and the plaintiff has damaged the defendant the said $2350.00, and owes him said amount of money."

Plaintiff, replying, denied the allegations of said counterclaim, averring that the reason for its refusal to accept and purchase additional lumber from defendant was the fact that the lumber brought in by defendant did not comply with agreed specifications.

The issues submitted were answered by the jury as follows:

"1. In what amount, if anything is the defendant indebted to the plaintiff on the plaintiff's first cause of action. Answer: $253.44.

"2. In what amount, if anything, is the defendant indebted to the plaintiff in the plaintiff's second cause of action? Answer $357.14.

"3. In what amount, if anything, is the plaintiff indebted to the defendant on the defendant's counterclaim as alleged in the Answer? Answer: NOTHING."

Judgment for plaintiff, in accordance with the verdict, was entered. Defendant excepted and appealed, assigning errors.

*Mintz, Tillery & Cobb and Kirby Sullivan for plaintiff, appellee.*
*Isaac C. Wright for defendant, appellant.*

BOBBITT, J. Plaintiff was engaged in the business of selling building supplies, including lumber.

As to the first cause of action, defendant's admission established that $253.44 was the correct charge. *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16. Therefore, the burden was upon defendant to prove his affirmative defense of payment. *White v. Logan,* 240 N.C. 791, 83 S.E. 2d 892. He offered no evidence of payment, but relied solely upon his alleged counterclaim as justification for his failure to pay.

As to the separate account for advancements, plaintiff's evidence tended to show that plaintiff made advancements to defendant for his payroll; that plaintiff bought lumber from defendant at the prevailing market price; that each week, when paying for the lumber brought in by defendant, plaintiff deducted and applied on defendant's indebtedness to plaintiff for advancements a portion of the amount due defendant as purchase price for such lumber; that each weekly transaction was shown on a tally sheet, a duplicate of which was furnished to defendant on Friday of each week; that the charges on account of advancements and the credits on account of said deductions were entered on plaintiff's ledger sheets; and that, in addition to the charges for advancements, five additional charges were entered against defendant on said ledger sheets, to wit, amounts paid by plainitff to the Morris Plan Bank, representing stumpage at $20.00 per thousand, for application on defendant's indebtedness to said bank.

The ledger sheets, admitted in evidence under the circumstances stated below, for the period beginning 6 December, 1946, show the dates and amounts of 33 charges aggregating $25,946.52, and the dates and amounts of 27 credits aggregating $25,589.38, leaving a balance of $357.14. For said period, the first charge was on 6 December, 1946, and the last on 8 May, 1947; and the first credit was on 14 December, 1946, and the last on 27 May, 1947. Plaintiff's five checks to said bank, the basis for the aforesaid five charges on account of stumpage payments, were offered by defendant. One refers specifically to "Stumpage on Rackley Tract."

It appears that the witness Smith, who was plaintiff's president and in charge of its business, accompanied defendant when he undertook to borrow the money to purchase a timber tract; and that, as a feature of this loan, it was agreed that plaintiff would deduct and forward to the bank for application on defendant's note the amounts for stumpage, calculated as indicated, on lumber cut from said tract. Smith testified that he was uncertain as to the specific tract involved in this arrangement. Defendant testified positively that this arrangement related to the Keystone tract located "out from Scotts Hill."

Smith testified that the entries on the ledger sheets were made under his supervision at the time of the respective transactions. (The account

bears the caption, "Jim Dixon, Market Street Road, Wilmington, N. C.," and all entries are machine-made.) Thereupon, Smith was permitted to call out from said ledger sheets the dates and amounts of certain charge and credit entries appearing thereon, and to testify that the balance due as shown by the ledger sheets was $357.14. This testimony was admitted, over defendant's objections.

Smith testified further that plaintiff in May, 1947, refused to accept additional lumber from defendant because of its defective and unmarketable condition.

The ledger sheets so identified were competent evidence. *Supply Co. v. Ice Cream Co.*, 232 N.C. 684, 61 S.E. 2d 895; Stansbury, N. C. Evidence, sec. 155.

Moreover, if it be conceded that the testimony of Smith as to entries appearing on the ledger sheets was incompetent when offered and admitted, the prejudicial effect was removed when the ledger sheets themselves were offered and admitted in evidence.

Even so, appellant contends that it was improper for the court to admit the ledger sheets under these circumstances, viz.:

According to the record, the ledger sheets were not offered in evidence during the *original* taking of evidence. (Note: The briefs refer to the re-offering of the ledger sheets.) When announcement was made that the evidence was closed, appellant requested that the court charge the jury as follows:

> "The plaintiff's witness Mr. Smith testified that he had advanced and paid the defendant $25,946.52 and that Jim Dixon had delivered to the Smith Builders Supply Company lumber at the market price which was allowed by plaintiff, amounting to a total of over $31,000, an overpayment of over $4,500 which the plaintiff Smith Builders Supply Company owes the defendant, Jim Dixon."

Whereupon, it became apparent to plaintiff's counsel and to the court that Smith, in calling out credit entries on said ledger sheets, had referred inadvertently to four credits that antedated the period involved, namely, 8 November, 1946, $1,808.01, 16 November, 1946, $758.39 and $394.36, and 30 November, 1946, $2,731.06; and that these items, aggregating $5,691.82, constituted the basis for defendant's request for said special instruction. Under these circumstances, plaintiff moved to reopen the evidence and offer additional evidence, to wit, the ledger sheets.

The ledger sheets plainly show that, in transactions between plaintiff and defendant prior to 6 December, 1946, various charges and credits were entered; that the account for these charges was balanced and fully settled prior to 6 December, 1946; and that the four credits aggre-

gating $5,691.82 were in settlement of charges made prior to 6 December, 1946. The court admitted the ledger sheets, but only as to entries thereon for the period beginning 6 December, 1946.

Whether the case should be reopened and additional evidence admitted was discretionary with the presiding judge. *Hendrix v. Motors, Inc.*, 241 N.C. 644, 86 S.E. 2d 448; *Miller v. Greenwood*, 218 N.C. 146, 10 S.E. 2d 708. Certainly, under the circumstances stated, there was no abuse of discretion. Moreover, when the ledger sheets were admitted, appellant's request for special instruction was properly denied.

The jury found, in accordance with plaintiff's contention, that the true balance due on said advancements account was $357.14. In this connection, we have considered carefully the testimony of Smith, elicited on cross-examination, when questioned concerning certain tally sheets produced by Smith. Our appraisal of this evidence is that, in the view most favorable to defendant, it does no more than cast doubt upon the accuracy of the entries in the advancements account. It does not suffice to show affirmatively, nor did defendant offer evidence tending to show, that defendant did not receive proper credit for all lumber delivered to and accepted by plaintiff.

Turning now to defendant's counterclaim, it should be noted that defendant made no reference in his pleading to the Keystone tract; nor did plaintiff's reply specify any particular tract or tracts from which the alleged unacceptable lumber was cut.

Defendant's testimony was to the effect that the 47,000 feet of lumber on which his counterclaim was based was cut from the Keystone tract. The gist of his testimony was as follows: H. J. Rackley, who owned the mill, sawed the lumber from the Keystone tract for him. Defendant testified: "Mr. H. C. Croom tallied the lumber so Mr. Rackley would know the amount of his money each week. . . . Mr. Rackley wanted the money weekly for what was cut." The last tally sheet "with the name of Rackley on it was January 18, 1947." Defendant testified: "After January 18th I continued to deliver lumber to Mr. Smith from the mill out on the Market Street Road. All the lumber Mr. Smith obligated (*sic*) to take from me came from the mill Mr. Rackley operated, . . ." Again: "Mr. Smith and Mr. Pope, who was Superintendent, told me to slow up *on that mill*." (Italics added.) Again: "In the original trade Mr. Smith guaranteed me $50.00 a thousand on the mill Mr. Rackley ran . . ." According to defendant's testimony, while he could have gotten $50.00 a thousand for the 47,000 feet of lumber cut from the Keystone tract, he was obligated (and never released) "to deliver to him (Smith) the Keystone lumber, and to no one else, . . ."

Thereupon, defendant offered evidence tending to show that Pope said that plaintiff was overstocked; that Pope and Smith told him to

continue cutting the lumber from the Keystone tract and to stack it at or near defendant's sawmill site; that plaintiff would "take it in a few days"; that plaintiff did not do so; that the 47,000 feet, from exposure, turned blue and was ruined; and that, after it was ruined, plaintiff refused to take this lumber but continued to take lumber from defendant from another mill or mills.

The testimony of Croom, Sanders and James D. Dixon, Jr., witnesses for defendant, tended to show that no complaints were made to them as to lumber cut by Rackley from the Keystone tract.

While defendant's counterclaim was indefinite, defendant's evidence was explicit to the effect that it was based on plaintiff's refusal to take lumber cut from the Keystone tract. It is noted that defendant's evidence as well as that of plaintiff tended to show that, during the cutting on the Keystone tract and subsequent thereto, defendant delivered to plaintiff and plaintiff accepted from defendant lumber cut from another or other tracts and that this continued until May, 1947.

When recalled, Smith testified, in substance, that plaintiff had never refused to accept lumber from Mr. Rackley's mill; that the unacceptable lumber, on account of which plaintiff refused to continue to buy from defendant, came from defendant's other mills; that plaintiff needed the lumber in its business, was not overstocked, and had ample facilities to stack lumber on its premises; and that he never heard of any spoiled lumber until defendant's answer was filed.

Also, plaintiff offered in evidence, without objection, copies of letters dated 12 June, 1947, 29 July, 1947, 5 September, 1947, 27 September, 1947, 20 November, 1947 and 8 January, 1948, in which plaintiff made demand on defendant for payment; and in three of these letters plaintiff set forth the amounts of the respective balances, to wit, $253.44 on the open account, and $357.14 on the advancements account. True, defendant testified that he did not receive these letters; that he was sick the last of 1946 and in 1947 and was not in his office; that Charlie George, *his partner* and son-in-law, got the mail and, assisted by defendant's son, attended to the business in his absence; and that Charlie George may have received these letters. In addition, Rackley, subpoenaed while the trial was in progress, was called as a witness by plaintiff. He testified, in substance, that he remembered nothing about a large quantity of lumber, sometimes referred to as 47,000 feet, that turned blue and was wasted.

We cannot burden this opinion with a narration of the evidence in greater detail. Indeed, the above has been set forth with some reluctance; but it appeared necessary to demonstrate that an assignment of error on which appellant lays considerable emphasis must be rejected as untenable. We refer to appellant's contention that it was error "to have his claim denied on a defense not pleaded and of which he had not

been given prior notice and an opportunity to prepare to meet plaintiff's claim."

As noted above, defendant, in pleading his counterclaim, did not allege that the 47,000 feet of lumber referred to therein was cut from the Keystone tract. According to Smith's testimony, Smith had never heard of any claim by defendant concerning lumber alleged to have spoiled on account of plaintiff's refusal to accept it. Since all the evidence tended to show that plaintiff's dealings with defendant continued to May, 1947, long after the lumber from the Keystone tract had been cut, plaintiff, in replying, had reasonable grounds to believe that defendant's counterclaim referred to lumber cut from other tracts, to wit, the lumber plaintiff refused to accept in May, 1947. Plainly, the allegations in plaintiff's reply referred only to lumber which plaintiff admittedly refused to accept.

When defendant, by his evidence, disclosed at the trial that lumber cut from the Keystone tract was the basis of his counterclaim, the true issue was for the first time drawn clearly into focus, namely, whether plaintiff wrongfully refused to accept 47,000 feet of lumber cut from the Keystone tract with resulting damage to defendant by reason of such wrongful refusal. This crucial issue, under the court's instructions, was submitted for jury determination. In respect thereof, the burden of proof was on defendant. As to this, plaintiff made no contention that it refused to accept any lumber cut from the Keystone tract. On the contrary, in respect of this issue, plaintiff's evidence tended to show that it never refused to accept lumber cut from the Keystone tract; that no lumber from said tract spoiled from exposure or otherwise; and that the defective lumber, referred to in its reply, was from other tracts, brought in by defendant in May, 1947, or shortly prior thereto.

It would appear that plaintiff, if anyone, was taken by surprise when defendant's evidence related the indefinite allegations of the counterclaim solely to the lumber cut from the Keystone tract. We find nothing to substantiate the view that defendant was prejudiced by the allegations of plaintiff's reply. It must be kept in mind that the issue concerned defendant's case, to wit, his alleged counterclaim, not an affirmative defense thereto. Plaintiff simply took the position that the allegations of its reply were in explanation of its refusal in May, 1947, to continue to buy lumber from defendant and had no reference to lumber cut from the Keystone tract. The elimination from the case of any issue as to the quality of the lumber cut from the Keystone tract would appear favorable rather than prejudicial to defendant's position. The issue then was clear-cut, whether (1) plaintiff wrongfully refused to take lumber cut from the Keystone tract, and (2) if so, whether any such lumber spoiled from exposure to defendant's damage.

FREIGHT LINES *v.* BURLINGTON MILLS and BROOKS *v.* BURLINGTON MILLS.

As to cases cited by appellant as bearing on this assignment of error: *Sultan v. R. R.*, 176 N.C. 136, 96 S.E. 897; *Ewing v. Kates*, 196 N.C. 354, 145 S.E. 673; *King v. Coley*, 229 N.C. 258, 49 S.E. 2d 648; and *Cox v. Freight Lines*, 236 N.C. 72, 72 S.E. 2d 25, are authority for the proposition that *a plaintiff* must recover, if at all, on the cause of action alleged in the complaint. *McLaurin v. Cronly*, 90 N.C. 50, and *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785, are authority for the proposition that, unless an *affirmative* defense is pleaded, evidence tending to establish such affirmative defense is not admissible. Here, in respect of the third issue, plaintiff's defense to the counterclaim was a general denial, not an affirmative defense.

Appellant assigns as error (AE #7) the general charge of the court as to matters to be considered in passing upon the credibility of witnesses. No authority is cited. It is noted that the instruction was not pointed to any particular witness or party. This assignment is overruled. *Styers v. Bottling Co.*, 239 N.C. 504, 80 S.E. 2d 253; *Herndon v. R. R.*, 162 N.C. 317, 78 S.E. 287.

While we forbear discussion thereof in detail, we have considered all other of defendant's assignments of error; but, when considered in the light of the facts narrated above, we find no prejudicial error.

This action was commenced 19 November, 1949. The complaint was then filed. The answer was filed 10 December, 1949. The reply was filed 19 December, 1949. At this point, commendable diligence in the filing of pleadings was followed by a long season of inactivity; for apparently the action was quiescent until November Term, 1956. In view of the available preliminary procedures, *e.g.*, adverse examination, motion to make more definite and certain, pretrial hearing, etc., it seems rather remarkable that either party, at the time of the trial, should have been in doubt as to his adversary's position and contentions.

No error.