CAROL S. WALL, PLAINTIFF v. CARROLL C. WALL, III, DEFENDANT

No. COA99-732

(Filed 17 October 2000)

**1. Divorce— equitable distribution—marital home—value**

There was no prejudicial error in an equitable distribution proceeding in the trial court's failure to set out its calculations regarding the net value of the marital dwelling where the net value could be made certain from the facts found by the court.

**2. Divorce— equitable distribution—marital home—order to sell**

The trial court did not abuse its discretion in an equitable distribution proceeding by ordering that the marital home be sold and the proceeds divided between the parties where the court classified and valued the residence before selling it.

**3. Divorce— equitable distribution—pre-1997 action—value of profit-sharing plan—stipulation**

The trial court did not err in an equitable distribution action in finding the value of a profit-sharing plan as of the date of separation, but erred by dividing the post-separation increases between the parties. Defendant is bound by a stipulation regarding the value of the plan, and amendments adding the concept of divisible property to the Equitable Distribution Act are not applicable because this claim was asserted before 1 October 1997.

**4. Divorce— equitable distribution—evidence not considered—defendant's health**

The trial court in an equitable distribution proceeding should have made findings to indicate that it had considered defendant's testimony about his health situation, even if the court rejected the testimony or gave it little weight. Once evidence as to the parties' health or other matters is presented, the trial court must consider the evidence and make sufficient findings.

**5. Divorce— equitable distribution—tax consequences—not considered**

No error was found in an equitable distribution action from the trial court's failure to consider the tax consequences of its equitable distribution order where defendant did not demonstrate that evidence of tax consequences was brought to the court's attention before the close of evidence.

**6. Divorce— equitable distribution—pre-1997—debts paid after separation**

The trial court did not abuse its discretion in a pre-1997 equitable distribution action in its treatment of debts paid by defendant after separation. Prior to the 1997 amendments, a trial court had a number of options in dealing with payments on a debt after the date of separation; here, the court chose to treat the debt payments as a distributional factor but gave little weight to that factor.

**7. Divorce— equitable distribution—delay between close of evidence and entry of order—19 months**

New evidence and a new equitable distribution order were required where there was a delay of 19 months from the date of the trial to the entry of judgment. While there is inevitably some passage of time between the close of the evidence in an equitable

WALL v. WALL

[140 N.C. App. 303 (2000)]

distribution case and the entry of judgment, particularly in a lengthy, complicated matter, there was more than a de minimis delay in this case.

Appeal by defendant from judgment entered 26 June 1998 by Judge William N. Neely in Randolph County District Court. Heard in the Court of Appeals 14 August 2000.

*Michelle D. Reingold for defendant appellant.*

*No brief filed for plaintiff.*

HORTON, Judge.

Carol S. Wall (plaintiff) and Carroll C. Wall, III (defendant), were married on 19 December 1971. They separated on 5 May 1988 and were divorced by judgment entered 31 October 1994. Plaintiff's claim for equitable distribution was heard during September, October, and November 1996. The trial court took the matter under advisement and entered a written order on 26 June 1998, purporting to be "nunc pro tunc" 6 January 1998. The trial court concluded that an equal division would effect an equitable distribution of the marital property and debt, and defendant appealed.

Defendant contends that (I) the trial court erred in failing to properly value and distribute the marital home; (II) the trial court erred in failing to find a date-of-separation net value for the husband's profit-sharing plan, and also erred in dividing the post-separation appreciation of the plan assets. Defendant further contends (III) that the trial court erred in failing to consider his health condition as a distributional factor, (IV) failed to consider the tax consequences of the division to the parties, and (V) did not give him credit for payments on marital debt. Finally, (VI) defendant argues that the 19-month delay in entry of the equitable distribution order deprived him of due process.

## I. The Marital Residence

[1] In North Carolina equitable distribution actions, trial judges are required "to first determine what constitutes marital property, to then determine the net market value of that property, and finally, to distribute it based on the equitable goals of the statute and the specific statutory factors." *Little v. Little*, 74 N.C. App. 12, 16, 327 S.E.2d 283, 287 (1985). The trial court is permitted to distribute only marital property in an equitable distribution proceeding. N.C. Gen. Stat. § 50-20(c)

(1999); *Truesdale v. Truesdale*, 89 N.C. App. 445, 448, 366 S.E.2d 512, 514 (1988). The net market value of the marital property is calculated as of the date of the parties' separation. N.C. Gen. Stat. § 50-20(c); N.C. Gen. Stat. § 50-21(b) (1999). *See also Alexander v. Alexander*, 68 N.C. App. 548, 551, 315 S.E.2d 772, 775 (1984) (defining net value as "market value, if any, less the amount of any encumbrance serving to offset or reduce market value").

Here, the defendant argues that the trial court did not find the net fair market value of the marital home on the date of separation, as it was required to do. There was considerable disagreement between the plaintiff and defendant as to valuation, classification, and distribution of various items of property and debts. In an effort to define and narrow the issues, the parties entered into a detailed pretrial order on 14 May 1996. Based on their extensive pretrial discovery, the parties created fifteen schedules (identified as A through O) on which they listed all property, both marital and separate, and attempted to classify and value the property and debts. The schedules were attached to the pretrial order and incorporated therein by reference. The pretrial order was signed by the court, the parties, and their counsel on 14 May 1996.

As to the marital home, identified as the Country Club Drive residence, the parties were unable to agree as to either its net value or its distribution. On Schedule D of the pretrial order, plaintiff contended that the residence had a net value of $43,106.34 and defendant calculated the net value at $57,106.35. Both parties requested that they be awarded the marital home in the distribution of property. The parties also stipulated in the pretrial order that there were encumbrances on the marital residence on the date of separation, consisting of a mortgage to BB&T of $132,136.71 and an equity line of $10,756.95, also to BB&T. Subsequent to the trial of this case, the parties entered into a written stipulation on 24 November 1997 that the "current gross fair market value of the Country Club Drive residence is $221,250.00."

Based on these stipulations and evidence presented at trial, the trial court found that the residence was valued at $186,000.00 on the date of separation and $221,250.00 on the date of trial. The trial court provided for disposition of the marital home by sale, with the proceeds to be used, in part, to pay off the costs of sale and the encumbrances on the home. The court also found that the mortgage on the date of separation was $132,136.71 and the equity line debt on the date of separation was $17,753.20.

Defendant does not question the accuracy of the trial court's findings, but argues that the trial court did not make an explicit finding about the net value of the marital home on 5 May 1988, the date of separation. However, the trial court found a gross fair market value on the date of separation of $186,000.00, subject to encumbrances of $132,136.71 and $17,753.20. Subtracting the encumbrances from the gross value of the home leaves a net fair market value on the date of separation of $36,110.09. While it would have been better practice for the trial court to make a specific finding as to the net fair market value of the dwelling house on the date of separation, such value can be easily calculated from its findings. *See Shoe Store Co. v. Wiseman,* 174 N.C. 716, 717, 94 S.E. 452, 453 (1917) (applying the maxim " '[t]hat is certain which can be made certain' " to ascertain the amount due on notes in a bankruptcy proceeding). Though the net fair market value of the Walls' residence was not explicitly set out, it can be made certain from the facts found by the trial court. We hold, therefore, there is no prejudicial error in this case in the failure of the trial court to set out its calculations with regard to the net value of the marital dwelling.

[2] Nor do we find error in the trial court's disposition of the dwelling house. The defendant argues that the trial court must distribute the home to one of the parties, rather than ordering it sold. We disagree.

We first note that the trial court is vested with wide discretion in family law cases, including equitable distribution cases. *Beightol v. Beightol,* 90 N.C. App. 58, 60, 367 S.E.2d 347, 348, *disc. review denied,* 323 N.C. 171, 373 S.E.2d 104 (1988) (citation omitted). Thus, a trial court's ruling "will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White,* 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

While we have never expressly discussed the trial court's power to order the sale of marital assets as part of an equitable distribution, our prior decisions have implicitly recognized the power of the trial court to do so. *See, e.g., Dorton v. Dorton,* 77 N.C. App. 667, 336 S.E.2d 415 (1985) (trial court did not err in forbidding either party to receive a commission or broker's fee on the sale of the marital home after ordering the home sold); *Soares v. Soares,* 86 N.C. App. 369, 357 S.E.2d 418 (1987) (trial court erred in failing to value the marital home before ordering it sold); and *Thomas v. Thomas,* 102 N.C. App. 127, 401 S.E.2d 367 (1991) (citing *Soares* for same proposition). We

continue to stress the importance of following the steps of first classifying, then valuing and distributing marital property. Each step is a prerequisite to the performance of the next, and failure to follow the prescribed order will result in a fatally flawed trial court disposition. "[O]nly those assets and debts that are *classified* as marital property and *valued* are subject to *distribution* under the Equitable Distribution Act (Act) . . . ." *Grasty v. Grasty*, 125 N.C. App. 736, 740, 482 S.E.2d 752, 755, *disc. review denied*, 346 N.C. 278, 487 S.E.2d 545 (1997) (emphasis added). Here, there was no dispute over the classification of the marital home as marital property. Further, as we discussed above, the trial court properly valued the marital home prior to its distribution. Rather than distributing the home to one of the parties, the trial court ordered the parties to sell the property by 13 January 1998 and use the proceeds to pay off the costs of sale and the encumbrances on the home; any remaining funds from the sale were to be distributed to plaintiff-wife, with defendant-husband receiving a credit equal to one-half of these proceeds. The trial court classified and valued the Country Club Drive residence before distributing it, and we find no abuse of discretion in the trial court's order that the home be sold and proceeds divided between the parties.

## II. The Pension Plan

[3] In *Becker v. Becker*, 88 N.C. App. 606, 607, 364 S.E.2d 175, 176 (1988), this Court adopted a very restrictive reading of the Equitable Distribution Act, and held that the marital estate was "frozen" on the date of separation. Thus, any gains on marital property after that date were not—by definition—marital property, even when the gains represented passive income such as interest on a bank account. *See* N.C. Gen. Stat. § 50-20(b) (definitions of marital and separate property). Since such increases were also not classifiable as separate property, the term "non-marital property" was formulated to describe these types of gains. *Chandler v. Chandler*, 108 N.C. App. 66, 68, 422 S.E.2d 587, 589 (1992). In response to the problem of accounting for post-separation increases in value during the distribution stage of equitable distribution, this Court decided to treat such increases as distributional factors, thereby accounting for their existence but stopping short of "thawing" the marital estate to allow additions after the date of separation. In *Truesdale*, we definitively stated that "[t]he post-separation appreciation of marital property is itself neither marital nor separate property. Such appreciation must instead be treated as a distributional factor under Section 50-20(c)(11a) or (12) . . . ." *Truesdale*, 89 N.C. App. at 448, 366 S.E.2d at 514. In *Mishler v.*

*Mishler,* 90 N.C. App. 72, 367 S.E.2d 385, *disc. review denied,* 323 N.C. 174, 373 S.E.2d 111 (1988), we held that "where there is evidence of *active or passive appreciation* of the marital assets after that date [the date of separation], the court must consider such appreciation as a factor [in distributing the marital property] under G.S. 50-20(c)(11a) or (12), respectively." *Id.* at 77, 367 S.E.2d at 388 (emphasis added).

Further, we held that it was reversible error for a trial court to attempt to divide gains resulting from the increase in value of marital property, ruling that the trial court must instead consider the gains as a distributional factor, and then make a division which recognized that factor. *See Becker,* 88 N.C. App. at 607-08, 364 S.E.2d at 176-77. Fortunately, this restrictive reading of the Act was remedied by the passage of the 1997 amendments to the Act, which added the category of divisible property to deal with changes in marital property values after the date of separation. 1997 N.C. Sess. Laws ch. 302, §§ 1-3. Here, however, plaintiff asserted her claim for equitable distribution prior to 1 October 1997, so that the amendments adding the concept of "divisible property" to the Act are not applicable to this claim.

As to the defendant's pension plan, the parties stipulated in Schedule A of the pretrial order, item II-H, that the "[m]arital portion of defendant's profit sharing plan (includes post date of separation growth[)]" had a net value of $245,791.53 on the date of separation, was in the possession of the defendant, and was to be distributed to the defendant. On Schedule M of the pretrial order, in an item numbered "10. III-H," the parties stipulated that the separate portion of defendant's profit-sharing plan was valued at $170,674.00 on the date of separation.

In its judgment, the trial court found that:

18. The marital portion of the defendant's profit-sharing plan (including post-date of separation growth) was $245,791.53 at the time of trial. Additional growth has occurred since trial. The new marital portion of this plan, including all growth on the funds in the account as of date of separation, should be calculated by accountant Robert Oates and such portion divided equally between the parties.

The court then decreed that:

8. The marital portion of the defendant's profit-sharing plan, including growth on the balance of the account as of the date of separation, shall be recalculated by Robert Oates. Plaintiff shall receive one-half of this amount plus an additional amount as indicated below.

9. Upon the sale of the Country Club Drive property, the proceeds shall be distributed in accordance with Finding of Fact 9.d. The plaintiff shall receive what would have been the defendant's half of the proceeds to apply toward the $112,813.21 in property required to equalize the division of the marital estate between the parties. The remainder of the $112,813.21 shall be transferred to the plaintiff from the defendant's profit-sharing plan following the sale of the Country Club Drive residence.

Defendant contends that the trial court erred in its treatment of the profit-sharing plan in at least two important respects: first, he contends that the trial court never carried out its mandate to value all property as of the date of separation, in that the value used by the trial court included post-separation gains on the marital portion of the profit-sharing plan. Second, defendant argues that any post-separation gains following the separation of the parties would not be subject to division by the trial court but would be treated as distributional factors in the distribution.

We agree that it would normally be error for the trial court to fail to value an item of marital property as of the date of separation, excluding gains or losses on the property since the date of separation. Here, however, the parties and their counsel stipulated to the value of the profit-sharing plan as of the date of separation. Although that value obviously included some gains on the plan assets after the date of separation, defendant is bound by his stipulation, and estopped to question the value used by the trial court.

Plaintiff and defendant engaged in years of discovery and negotiation, followed by the execution of a detailed, 38-page pretrial order. Such an order is designed to narrow the issues, save trial time and expense, and lead to a just result. The parties presented evidence in this case for some nine days, producing a transcript of 1,314 pages. During the entire proceeding, defendant did not question the accuracy of the stipulation with regard to the value of his profit-sharing plan on the date of separation, and the trial court properly relied on that agreement. Parties are not free to enter into stipulations for the purposes of trial, then abandon those agreements and chart a differ-

ent course when they sail into appellate waters. *Inman v. Inman*, 136 N.C. App. 707, 525 S.E.2d 820, *cert. denied*, 351 N.C. 641, 543 S.E.2d 870 (2000). In *Inman*, the parties signed a pretrial order with stipulations as to the classification of various items of property as marital property, and stipulated that the marital property be equally divided. *Id.* at 713, 525 S.E.2d at 824. The plaintiff later objected when items he believed to be his separate property were deemed marital by the court; he also disagreed with other facts which were the subject of pretrial stipulations. *Id.* We noted in *Inman* there was no evidence in the record showing any attempt to modify the terms of the pretrial order, nor was there any evidence showing that the stipulations were not voluntarily agreed upon. Consequently, plaintiff was bound by his stipulations. *Id.* at 716, 525 S.E.2d at 825. The same is true in the present case. The voluminous record does not show any involuntary actions by the parties regarding their stipulations. Absent such evidence, we will deem the parties bound by their stipulations and will not allow retroactive alterations of those stipulations. Therefore, based on the stipulation of the parties, the trial court did not err in finding that the date of separation net value of the profit-sharing plan was $245,791.53.

As to the division of the growth in the profit-sharing plan since the date of separation, however, we must agree with defendant's contention. Under our line of cases beginning with *Truesdale*, the trial court may not divide the post-separation increases between the parties. Therefore, insofar as the judgment of the trial court attempts to do so, it is erroneous and is reversed. On remand, the trial court will consider any increase in value of the husband's profit-sharing plan as a distributional factor in fashioning a new distribution order.

### III. Defendant's Health As A Distributional Factor

**[4]** Defendant also contends that the trial court erred in failing to consider his health condition as a distributional factor. N.C. Gen. Stat. § 50-20(c)(3) provides that the court is to consider the "physical and mental health of both parties." Where evidence of a distributional factor such as a party's health is introduced, it is error for the trial court to fail to make findings of fact with respect to that factor. *Alexander*, 68 N.C. App. at 553, 315 S.E.2d at 776 (failure of trial court to establish physical health of the parties (among other things) in its findings of fact rendered the findings deficient). Once evidence as to the parties' health or other matters is presented, the trial court must consider the evidence and "make findings sufficient to address the

statutory factors and support the division ordered." *Armstrong v. Armstrong*, 322 N.C. 396, 405, 368 S.E.2d 595, 600 (1988).

In the case before us, defendant testified at length during the nine-day trial about his health situation. He stated that he has chronic bronchitis, chronic sinusitis, ulcerated colitis (an inflammation of the colon), and back problems. He testified that these conditions forced him to miss work at times, and required hospitalization and continual doctor visits. Such testimony required that the trial court make appropriate findings of fact regarding the health of the defendant. Even if the trial court did not find the defendant's testimony to be credible, the court still should have made findings of fact to indicate that the court had considered the testimony, but rejected it or gave it little weight. On remand, the trial judge must consider the testimony defendant offered relative to the state of his health, and make written findings of fact based on the credible evidence.

### IV. Tax Consequences

**[5]** Next, defendant argues that the trial court's failure to consider the tax consequences of its equitable distribution order was error. The trial court's finding of fact number 12(h) states "[t]he division ordered herein takes into account the tax consequences and tax issues raised by the parties, and equalizes the consequences to the extent possible. No tax consequences support a deviation from an equal distribution of property." Although defendant contends there are possible adverse tax consequences of the distribution which the trial court did not consider, he does not direct us to any evidence in the voluminous transcript which relates to the tax consequences he discusses in his brief. The trial court is not required to consider tax consequences unless the parties offer evidence about them. Defendant may not now ascribe error to the trial court's failure to make such findings without demonstrating that such evidence was brought to the trial court's attention before the close of evidence. Defendant has the burden of showing that the tax consequences of the distribution were not properly considered, and he has failed to carry that burden. Therefore, this assignment of error is overruled.

### V. Defendant's Payments on Debts

**[6]** Defendant also contends that the trial court failed to consider payments he made on the marital home's mortgage debts and other debts. However, in its finding of fact number 12(n), the trial court found that

[t]he husband has made post-date of separation payments toward marital debt, joint debt, taxes, expenses of the parties' children, including college expenses, and maintenance and upkeep of the marital property. These were largely a factor of life style. Credit for any such payments is inappropriate, except that he will get credit for principal payment on certain marital debt by receiving that debt in the distribution. The husband was the only party with ability to pay interest on the parties' debt. There were delays on husband's part in reaching a resolution of this matter, and he insisted that there be no settlement for several years.

We believe that "credit," in the context of the above finding of fact, means "dollar for dollar" credit, not just credit in a broader sense. Prior to enactment of the 1997 amendments, a trial court had a number of options in dealing with payments on debt after the date of separation. *Rawls v. Rawls*, 94 N.C. App. 670, 676, 381 S.E.2d 179, 182 (1989) (stating that the manner in which the court distributes or apportions marital debts is a matter committed to the discretion of the trial court). The court could give the payor an "adjustive credit" or make other appropriate adjustment, or could simply treat the payments as a distributive factor. *Truesdale*, 89 N.C. App. at 450, 366 S.E.2d at 516 (stating that trial court may award adjustive credits as part of an overall marital property distribution); *Hendricks v. Hendricks*, 96 N.C. App. 462, 386 S.E.2d 84 (1989), *cert. denied*, 326 N.C. 264, 389 S.E.2d 113 (1990) (properly crediting a spouse for post-separation payments made); *Haywood v. Haywood*, 106 N.C. App. 91, 415 S.E.2d 565 (1992), *rev'd in part and remanded on other grounds*, 333 N.C. 342, 425 S.E.2d 696 (1993) (post-separation payments treated as distributional factor). Here, the trial court obviously chose to treat the debt payments as a distributional factor, but gave little weight to that factor. We have previously held that the trial court could choose to give no weight to a distributional factor. *Smith v. Smith*, 111 N.C. App. 460, 510, 433 S.E.2d 196, 226, *disc. review denied*, 335 N.C. 177, 438 S.E.2d 202 (1993), *rev'd on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994) (trial court properly found a distributional factor to be present and chose not to give any weight to the factor). Consequently, we find here no abuse of the trial court's discretion in its treatment of debts paid by defendant after separation.

## VI. Delay in the Entry of Judgment

[7] Defendant argues that his due process rights under both the United States Constitution and the North Carolina Constitution were

violated by the delay of 19 months from the date of trial to the entry of judgment in this matter. Defendant argues that an overall goal of our Equitable Distribution Act is "wind[ing] up the marriage and distribut[ing] the marital property fairly with as much certainty and finality as possible." *Lawing v. Lawing*, 81 N.C. App. 159, 183, 344 S.E.2d 100, 115 (1986).

We recognize there is inevitably some passage of time between the close of evidence in an equitable distribution case and the entry of judgment. That is particularly true in a lengthy, complicated matter such as the case before us. Competent counsel for the parties carried out extensive discovery, submitted numerous legal briefs and responded to the briefs filed by their opponents.

In many cases, a delay in the entry of judgment for 30 or 60 days following trial would not be prejudicial because there would be little or no change in the situation of the parties or the values assigned to the items of property. In this case, however, there was a nineteen-month delay between the date of trial and the date of disposition. This was more than a *de minimis* delay, and requires that the trial court enter a new distribution order on remand. Where there is such an extensive delay, even though it be due to factors beyond the trial court's control, we believe it would be consistent with the goals of the Equitable Distribution Act that the trial court allow the parties to offer additional evidence as to any substantial changes in their respective conditions or post-trial changes, if any, in the value of items of marital property.

Thus, on remand, the trial court must reconsider the evidence of the increase in value of the husband's profit-sharing plan following separation, treating such increase as a distributional factor, rather than attempting to divide the increase. Further, the trial court must reconsider the evidence offered by the husband on the state of his health, make appropriate findings about the evidence, and give it appropriate weight in making a new distribution decision. Finally, the trial court must give the parties an opportunity to offer evidence on the changes, if any, in value of the marital property since the trial of this matter. The trial court is then to make a new distribution order.

Except as set out herein, the remainder of the equitable distribution judgment from which this appeal was taken is affirmed.

Affirmed in part, reversed in part, and remanded.

Chief Judge EAGLES and Judge MARTIN concur.