WRIGHT v. WRIGHT

[222 N.C. App. 309 (2012)]

NICOLE RENEE WRIGHT, Plaintiff v. ANTHONY LAVON WRIGHT, Defendant

No. COA11-1511

(Filed 7 August 2012)

**1. Divorce—equitable distribution—classification of benefits—line of duty disability benefits—analytic approach**

The trial court erred in an equitable distribution case by awarding 37.5 percent of defendant husband's line of duty disability benefits to plaintiff wife. The trial court did not make a reasoned decision in classifying these benefits as a deferred compensation plan. The trial court's award was reversed and remanded with instructions for the trial court to make additional findings of fact using the analytic approach to justify its conclusion regarding the classification of the benefits.

**2. Divorce—equitable distribution—classification—total permanent disability benefits—loss of earning capacity—separate property**

The trial court erred in an equitable distribution case by awarding plaintiff wife 37.5 percent of defendant husband's total permanent disability benefits because these benefits were "disability benefits of the traditional type" and were intended to replace a loss of earning capacity. Thus, the trial court should have classified his total permanent disability benefits as separate property.

**3. Divorce—equitable distribution—delayed judgment—no showing of prejudice**

The trial court did not err by rendering its equitable distribution judgment twenty-one months after the last evidentiary hearing. Defendant made no showing that he was actually prejudiced by the trial court's delay.

Appeal by defendant from judgment of equitable distribution entered 26 July 2011 by Judge William G. Hamby, Jr. in Cabarrus County District Court. Heard in the Court of Appeals 26 April 2012.

*Nicole Renee Wright, attorney for plaintiff.*

*Matthew F. Ginn of Ginn & Link, attorney for defendant.*

ELMORE, Judge.

WRIGHT v. WRIGHT

[222 N.C. App. 309 (2012)]

Anthony Lavon Wright (defendant) appeals from an equitable distribution judgment awarding, among other things, 37.5 percent of his line of duty disability payments and 37.5 percent of his total permanent disability payments to Nicole Renee Wright (plaintiff). After careful consideration, we affirm in part, and reverse and remand in part.

## I. Background

Plaintiff and defendant were married on 21 September 2002, and they separated on 18 May 2008. During the duration of their marriage defendant was employed as a professional football player with the National Football League. He played for several teams including the Baltimore Ravens, the Dallas Cowboys, and the New York Giants.

Defendant sustained four significant injuries during his playing career. Three of those injuries occurred during his marriage to plaintiff. Defendant's fourth, and final, injury occurred after the parties had separated. As a result of these injuries, defendant retired from the league in 2008. At that time, he began receiving line of duty disability benefits. These benefits are paid to former players who suffer a football-related injury, and who are no longer able to participate in football activities. Defendant also applied for total permanent disability benefits. These benefits are paid to former players who suffer an injury which renders the player unable to sustain any type of employment, even employment unrelated to football.

On 15 May 2008, plaintiff filed a complaint requesting, in part, equitable distribution. Two evidentiary hearings were held on the issue of equitable distribution. The first hearing was held on 10 September 2009, and the second hearing was held on 2 October 2009. On 26 July 2011, the trial court entered a judgment of equitable distribution.

In that judgment, the trial court made several specific findings related to the line of duty disability benefits and the total permanent disability benefits. The trial court found that both benefits "notwithstanding their designation as 'disability' or something similar in this case, are not conventional disability programs. A conventional disability program is designed in anticipation of a full extended lifetime ability to work."

With regards to the line of duty disability benefits, the trial court found that they "are more analogous to a deferred compensation plan in an ordinary industry, [when] taking into consideration the fact that a career as a professional athlete in football is exceptionally brief,

exceptionally lucrative, and exceptionally uncertain." The trial court also found that the line of duty disability benefits "involve injuries that affect the person's ability to play football, but do not necessarily prevent the person from working in a wide variety of other more ordinary and long-term professions." Therefore, the line of duty disability benefits "are a form of extended or deferred benefit incurred during a very limited term of employment." As such, they "may be appropriately considered as partially marital property, or in the alternative, a basis for an unequal distribution." The trial court then determined that "three-quarters (75%) of these [benefits] were the results of injuries occurring during the parties['] marriage, based upon . . . 4 injuries . . . 3 of which occurred during the marriage. The 25% remainder would be separate property of [defendant]."

With regards to the total permanent disability benefits, the trial court found that they are "a long-term disability plan" which are "a separate private employment benefit of [defendant] which was partially purchased with . . . marital employment. Thus [they are] classified as partial marital property and distributed in the same manner as the [line of duty disability benefits]."

Accordingly, the trial court then ordered, in part, that 37.5 percent of both defendant's line of duty disability benefits and total permanent disability benefits be distributed to plaintiff as marital property. Defendant now appeals.

## II. Analysis

"A trial court is vested with wide discretion in family law cases, including equitable distribution cases." *Cooper v. Cooper*, 143 N.C. App. 322, 324, 545 S.E.2d 775, 777 (2001) (quotations and citations omitted). "Accordingly, a trial court's ruling in an equitable distribution award is entitled to great deference upon appellate review, and will be disturbed only if it is so arbitrary that [it] could not have been the result of a reasoned decision." *Gagnon v. Gagnon*, 149 N.C. App. 194, 197, 560 S.E.2d 229, 231 (2002) (citations and quotations omitted).

A. Line of duty benefits

[1] Defendant first argues that the trial court erred in awarding 37.5 percent of his line of duty disability benefits to plaintiff. Specifically, defendant argues 1) that the trial court erred in finding these benefits to be more like a deferred compensation plan and 2) that in the alternative, the trial court erred in finding that three-fourths of the bene-

fits were marital property, because his fourth, and final injury, which occurred after the date of separation, was the sole reason he was no longer employable in a football-related capacity. We agree.

"Our Supreme Court has adopted an analytic approach for classifying personal injury awards." *Johnson v. Johnson*, 117 N.C. App. 410, 412, 450 S.E.2d 923, 925 (1994) (citation omitted). Under the analytic approach, "the portion of [a personal injury] award representing compensation for non-economic loss—i.e., personal suffering and disability—is the separate property of the injured spouse; the portion of an award representing compensation for economic loss . . . during the marriage . . . is marital property." *Id.* (quotation omitted).

Similarly, employing the analytic approach to disability benefits requires the determination of "whether the benefits that [the] plaintiff received were truly disability benefits or were retirement benefits (compensation for economic loss)." *Id.* This Court has held that " 'disability retirement benefits' which were intended to replace the recipient's loss of earning capacity due to disability were the separate property of that spouse." *Finkel v. Finkel*, 162 N.C. App. 344, 347, 590 S.E.2d 472, 474 (2004) (citation omitted).

In this case, defendant received line of duty disability benefits as part of his retirement plan. The line of duty disability benefits were provided to defendant because, "[d]uring his playing days[,] he . . . incurred a 'substantial disablement arising out of NFL football activities.' "

However, the trial court found that defendant's line of duty disability benefits were more like a deferred compensation plan and not a true disability benefit. The trial court reasoned that these benefits are paid to individuals whose injuries render them unable to continue to play football, but who may continue to work in other more "ordinary" professions. The trial court determined that the line of duty disability benefits were not intended to actually compensate defendant for a physical disability, given the "exceptionally brief, exceptionally lucrative, and exceptionally uncertain" duration of a professional football career. Therefore, the trial court concluded, "the disability programs in this case are a form of extended or deferred benefit incurred during a very limited term of employment."

We are unable to find that the trial court made sufficient findings of fact showing an application of the analytic approach. "In assessing the status of disability benefits in equitable distribution actions, the analytic approach mandates the focus be directed at what is the

nature of the wages being replaced." *Finkel*, 162 N.C. App. at 348, 590 S.E.2d at 475. Therefore, rather than focusing generally on the nature of a career in football or the ability of a typical player to play football after an injury, the trial court's findings of fact should have focused on "the nature of the wages being replaced" by the line of duty disability benefits in this particular case. The appropriate inquiry requires questions such as, whether the line of duty disability program compensates defendant for loss of earning capacity due to disability? Whether it compensates defendant for future economic loss? What facts specific to this case make defendant's line of duty disability benefits similar or dissimilar to a deferred compensation plan? Do the benefits, or a portion of the benefits, compensate defendant for non-economic losses— i.e., personal suffering, injury, or disability?

Thus, we conclude that the trial court did not make a reasoned decision in classifying these benefits as a deferred compensation plan. Accordingly, we reverse the trial court's award of 37.5 percent of these benefits to plaintiff, and remand the issue with instructions that the trial court make additional findings of fact using the analytic approach to justify its conclusion regarding the classification of the benefits.

B. Total permanent disability benefits

[2] Defendant next argues that the trial court erred in awarding plaintiff 37.5 percent of his total permanent disability benefits because these benefits are "disability benefits of the traditional type" and are intended to replace a loss of earning capacity. As a result, defendant contends that the trial court erred in failing to classify his total permanent disability benefits as separate property. We agree.

In *Johnson* we held that "disability benefits which truly compensate for disability are separate property." 117 N.C. App. at 414, 450 S.E.2d at 926. There we noted that the benefits at issue were the plaintiff's separate property because "no marital labor contributed to plaintiff's acquisition of the disability retirement benefits[]" and that "[the] [p]laintiff did not contribute money specifically to a disability fund." *Id.* at 415, 450 S.E.2d at 927.

Here, the record shows that the total permanent disability benefits at issue are paid to individuals whose injuries "render[] them unable to hold or sustain any type of employment, even non-football related employment." Thus, it is clear from the record that the total permanent disability benefits were paid to defendant to compensate him for an actual physical disability, which rendered him wholly

unable to secure any type of employment. As a result, under *Johnson*, these benefits would be classified as defendant's separate property. However, the trial court classified the benefits "as partial marital property" because it found that the benefits were "partially purchased with marital income and/or marital employment[.]" But, upon further review of the record, we conclude that it lacks any evidence showing that defendant's marital labor contributed to his acquisition of these benefits, or that defendant contributed money to acquire these benefits. As such, we are unable to conclude that the trial court made a reasoned decision in finding these benefits to be partial marital property. Accordingly, we reverse the trial court's award of 37.5 percent of these benefits to plaintiff, and we remand the issue for further proceedings.

C. Delay in judgment

[3] Finally, defendant argues that the trial court erred in rendering its equitable distribution judgment twenty-one months after the last evidentiary hearing. Specifically, defendant argues that the delay here requires the trial court to enter a new order after allowing the parties to offer additional evidence. We disagree.

Defendant directs our attention to this Court's ruling in *Wall v. Wall*, 140 N.C. App. 303, 314, 536 S.E.2d 647, 654 (2000). In *Wall*, the defendant argued that his due process rights under both the United States Constitution and the North Carolina Constitution were violated by a delay of nineteen months from the date of the trial to the entry of equitable distribution judgment. 140 N.C. App. at 313-14, 536 S.E.2d at 654. We concluded that "there is inevitably some passage of time between the close of evidence in an equitable distribution case and the entry of judgment[,]" but that "a nineteen-month delay between the date of trial and the date of disposition. . . . [is] more than a *de minimis* delay, and requires that the trial court enter a new distribution order on remand." *Id.* at 314, 536 S.E.2d at 654.

However, subsequent to our ruling in *Wall* we addressed the same issue in *Britt v. Britt*, 168 N.C. App. 198, 606 S.E.2d 910 (2005). There, we determined that "*Wall* establishes a case-by-case inquiry as opposed to a bright line rule for determining whether the length of a delay is prejudicial." *Id.* at 202, 606 S.E.2d at 912. And that "since *Wall*, this Court has declined to reverse late-entered equitable distribution orders where the facts have revealed that the complaining party was not prejudiced by the delay." *Id.* We then found that "[i]n *Wall*, potential changes in the value of marital or divisible property

**WRIGHT v. WRIGHT**

[222 N.C. App. 309 (2012)]

between the hearing and entry of the equitable distribution order warranted additional consideration by the trial court." *Id.* We then concluded that the plaintiff in *Britt* "made no argument that the circumstances that counseled in favor of reversing the order in *Wall* are present in the case *sub judice*." *Id.*

Likewise, here on appeal defendant has made no showing that he was actually prejudiced by the trial court's delay. He argues only that "both parties potentially could have benefited from further hearing given the passage of such a significant period of time." While we strongly advise against lower courts allowing such a significant lapse of time to occur between the hearing date and the entry of order, we nonetheless conclude that the trial court did not err with regards to this issue.

### III. Conclusion

In sum, we reverse the trial court's award of 37.5 percent of defendant's line of duty disability benefits to plaintiff and we reverse the trial court's award of 37.5 percent of defendant's total permanent disability benefits to plaintiff. We remand for further proceedings consistent with this opinion. Finally, we conclude that the trial court did not err in entering its judgment twenty-one months after the last evidentiary hearing on this matter, because defendant has failed to show that he was prejudiced by the delay.

Affirmed in part, reversed and remanded in part.

Judges GEER and THIGPEN concur.