IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-446

Filed 7 May 2024

Mecklenburg County, No. 15 CVD 87

JASON M. SNEED, Plaintiff,

v.

CHARITY A. JOHNSTON (SNEED), Defendant.

Appeal by Plaintiff from Orders entered 30 September 2022 and 17 October 2022 by Judge Gary L. Henderson in Mecklenburg County District Court. Heard in the Court of Appeals 24 January 2024.

*Miller Bowles Cushing, PLLC, by Nicholas L. Cushing, for Plaintiff-Appellant.*

*Connell & Gelb PLLC, by Michelle D. Connell, for Defendant-Appellee.*

HAMPSON, Judge.

**Factual and Procedural Background**

Jason M. Sneed (Plaintiff) appeals from an Equitable Distribution Order and Judgment awarding Charity A. Johnston (Defendant) a distributive award of $1,550,000 representing one-half the value of Plaintiff's law firm, as well as requiring Plaintiff to reimburse Defendant for certain costs of a business appraiser, and an Order Denying Plaintiff/Husband's Motion to Strike and Motion to Reopen Evidence.

The Record before us tends to reflect the following:

The parties in this case were formerly husband and wife. The parties married on 17 August 1996, separated on 5 January 2015, and divorced on 8 March 2016. In 2011, during the marriage, Plaintiff started a law firm, Sneed, PLLC. On 2 May 2019, the trial court entered a Consent Order Re Business Appraiser, appointing Greg Reagan of Reagan FV, LLC to value Sneed, PLLC at the date of separation. On 26 July 2019, the parties subsequently entered into a Consent Order, which resolved all issues related to equitable distribution except for "the classification, valuation, and distribution of Sneed, PLLC and all assets owned by Sneed, PLLC[.]"[1]

Initially, in the summer of 2019, Plaintiff communicated with Reagan and provided him with financial documents concerning Sneed, PLLC. On 25 September 2019, Reagan provided both parties with a draft valuation of Sneed, PLLC, which indicated its value as of the date of separation was $3,220,000. From September 2019 to January 2020, Reagan attempted to contact Plaintiff numerous times to obtain financial documents and get his assistance in valuing Sneed, PLLC. Plaintiff, however, repeatedly ignored Reagan, declined to send him information, and refused to pay his portion of Reagan's fee. Instead, Defendant paid the balance owed to

---

[1] The parties have not included this Consent Order in the Record on Appeal. As such, we are unable to discern whether the trial court ordered an equal or unequal distribution of marital and divisible property, the factors considered, or how the division of the value of the law firm at issue in this case fits into the equitable distribution of the totality of the parties' marital estate. Instead, the parties appear to have agreed to carve out the law firm from other assets and liabilities, and simply sought the trial court to classify the firm, value the firm, and divide it. As such, this is the limited lens through which we analyze this case.

Reagan.

On 6 March 2020, Reagan provided both parties with a final Calculation of Value of Sneed, PLLC. Reagan provided the parties with a final invoice for the valuation services on 10 April 2020. Over the following three months, Reagan sent monthly correspondence to Plaintiff regarding his final invoice, all of which went unanswered. Counsel for Defendant also sent a letter to Plaintiff regarding the appraisal and outstanding balance. Although Plaintiff acknowledged receiving this letter, he did not respond to any of the issues raised in the letter. Finally, on 14 October 2020, Defendant paid the outstanding balance for Reagan's service. On 14 December 2020, Defendant hired Reagan to perform a Valuation of Sneed, PLLC as of 5 January 2015—the date of separation.

The trial court heard this matter over two days in December 2021. At trial, Plaintiff testified that at the time of trial the value of Sneed, PLLC was either negative or zero due to an outstanding credit line. Reagan testified as an expert witness for Defendant. Reagan valued Sneed, PLLC at $3,100,000 as of the date of separation. He testified ten percent of Sneed, PLLC's goodwill value was enterprise goodwill, while the remaining ninety percent was personal goodwill attributable to Plaintiff.

On 30 September 2022, the trial court entered an Equitable Distribution Order and Judgment (the Equitable Distribution Order). The Order included 75 Findings of Fact detailing the trial court's valuation and distribution process. Ultimately, the

trial court accepted Reagan's date of separation value of Sneed, PLLC of $3,100,000. The trial court further found its value included a valuation of the goodwill of Sneed, PLLC of $302,436 enterprise goodwill and $2,688,321 personal goodwill. The trial court did not find a date of distribution value of the firm. Instead, it expressly found Plaintiff "has failed to provide the [c]ourt with any credible value of Sneed, PLLC as of the date of separation or as of the date of trial."

The trial court ordered Plaintiff to pay a distributive award to Defendant of $1,550,000—representing one-half of the date of separation value of Sneed, PLLC—payable in monthly installments of $8,611.11 per month over a fifteen-year period. Additionally, the trial court ordered Plaintiff to pay $8,520.64 to reimburse Defendant for payments Defendant made to Reagan under the initial appointment order.

On 12 January 2022, Plaintiff filed a Motion to Strike Testimony and Reports of Court-Appointed Expert Greg Reagan. On 27 July 2022, Plaintiff filed a Motion to Reopen Evidence. The trial court entered an Order denying both Motions on 17 October 2022. Plaintiff timely filed Notice of Appeal on 25 October 2022 from both the 30 September 2022 Equitable Distribution Order and the 17 October 2022 Order Denying the Motion to Strike and Motion to Reopen Evidence.

## **Issues**

The issues are whether: (I) the trial court's Findings of Fact were supported by competent evidence; and whether the trial court erred by (II) valuing Sneed, PLLC at

$3,100,000; (III) classifying Sneed, PLLC as marital property; (IV) failing to distribute the decrease in the value of Sneed, PLLC; (V) denying Plaintiff's Motion to Reopen Evidence; (VI) failing to credit Plaintiff for his child support overpayment; and (VII) ordering Plaintiff to pay a distributive award of $1,550,000.

## **Analysis**

### I.    Trial Court's Findings of Fact

Plaintiff challenges the trial court's Findings of Fact 23, 30, 31, 37, 40-47, 50, 52-54, 56-65, 67, 69, and 72-74 in the Equitable Distribution Order.  However, Plaintiff fails to make any specific argument as to each challenged Finding or to explain how or why he believes the challenged Findings to be deficient.

This Court considered a similar challenge to findings of fact—made in the context of a ruling by an Administrative Law Judge—in *Rittelmeyer v. University of North Carolina at Chapel Hill*, 252 N.C. App. 340, 799 S.E.2d 378 (2017).  There, we determined:

> Because petitioner has failed to specifically raise an argument on appeal to any particular finding of fact, has failed to direct us to any particular portion of the record to consider a challenge to even one finding of fact, has failed to address any particular finding of fact as not supported by the evidence, and has failed to raise any issues with the findings of fact which she contends are material, we conclude that petitioner has abandoned her argument challenging the findings of fact.

*Id.* at 351, 799 S.E.2d at 385.

This Court has also considered a similar failure to explain the basis for a

challenge to findings of fact in *Wall v. Wall*, 140 N.C. App. 303, 312, 536 S.E.2d 647, 653 (2000). The defendant in *Wall* argued the trial court did not consider adverse tax consequences in its equitable distribution order. *Id.* This Court held "[defendant] does not direct us to any evidence in the voluminous transcript which relates to the tax consequences he discusses in his brief. . . Defendant has the burden of showing that the tax consequences of the distribution were not properly considered, and he has failed to carry that burden." *Id.*

Similarly, here, Plaintiff's brief merely states: "For the reasons further discussed below, [Plaintiff] specifically challenges the trial court's findings of fact . . . Additionally, [Plaintiff] challenges the trial court's conclusions of law 2, 3, 4, 6, 7, 8, 9 and 11." Although Plaintiff alludes to arguments regarding these Findings and Conclusions, he does not make specific arguments in support of each. A generalized assertion the Findings "lack competent evidentiary support," standing alone, is not sufficient to preserve this argument for appellate review. *See Rittelmeyer*, 252 N.C. App. at 351, 799 S.E.2d at 385. Consequently, we reject this argument, except to the extent specific Findings are challenged within other arguments.

II.    Valuation of Sneed PLLC

"The task of a reviewing court on appeal is to determine whether the approach used by the trial court reasonably approximated the net value of the partnership interest. If it does, the valuation will not be disturbed." *Stowe v. Stowe*, 272 N.C. App. 423, 428, 846 S.E.2d 511, 516 (2020) (quoting *Poore v. Poore*, 75 N.C. App. 414,

419, 331 S.E.2d 266, 270 (1985) (citation omitted)). This Court in *Poore* noted "[t]he valuation of each individual practice will depend on its particular facts and circumstances[,]" and directed trial courts to consider the following components of a practice: "(a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities." *Poore*, 75 N.C. App. at 419, 331 S.E.2d at 270. "[T]he requirements and standard of review set forth [in *Poore*] apply to valuation of other business entities as well, and we have extended the *Poore* standards to the valuation of a marital interest in a closely held corporation." *Offerman v. Offerman*, 137 N.C. App. 289, 293, 527 S.E.2d 684, 686 (2000) (alterations in original) (citations and quotation marks omitted).

Further, this Court held: "In ordering a distribution of marital property, a court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied." *Poore*, 75 N.C. App. at 422, 331 S.E.2d at 272. Our Supreme Court has cautioned, however, that trial courts should "value goodwill with great care, for the individual practitioner will be forced to pay the ex-spouse tangible dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements." *McLean v. McLean*, 323 N.C. 543, 558, 374 S.E.2d 376, 385 (1988) (citations and quotation marks omitted).

"The trial court determines the credibility and weight of the evidence." *Watson v. Watson*, 261 N.C. App. 94, 101, 819 S.E.2d 595, 601 (2018) (citation omitted). The fact finder has "a right to believe all that a witness testified to, or to believe nothing that a witness testified to, or to believe part of the testimony and to disbelieve part of it." *Brown v. Brown*, 264 N.C. 485, 488, 141 S.E.2d 875, 877 (1965); *see also Fox v. Fox*, 114 N.C. App. 125, 134, 441 S.E.2d 613, 619 (1994) (trial court is the "sole arbiter of credibility and may reject the testimony of any witness in whole or in part.").

In this case, Plaintiff contends the trial court erred in its valuation of Sneed, PLLC by allowing Reagan to testify and accepting his reports into evidence; denying Plaintiff's Motion to Strike Testimony and Reports; and finding Reagan's calculations to be credible and relying on his testimony and report to value Sneed PLLC. Plaintiff's argument, however, ignores substantial evidence showing he repeatedly refused to cooperate with Reagan in his capacity as the court-appointed business appraiser. Based on the evidence presented at trial, the trial court made numerous Findings of Fact regarding Plaintiff's refusals to cooperate with Reagan and his violations of court orders, including the following:

> 51. At trial, [Plaintiff] objected to Mr. Reagan testifying in this matter on the grounds that Mr. Reagan was initially appointed as an expert by the Court, and then subsequently retained by [Defendant] as her expert to value Sneed, PLLC as of the parties' date of separation. The [c]ourt heard arguments from [Plaintiff] and [Defendant's] attorney on this point. Additionally, the [c]ourt received testimony from Mr. Reagan on this matter as well.

> 52. The [c]ourt does not find any bad faith or improper behavior

on the part of [Defendant] or Mr. Reagan by virtue of [Defendant] hiring Mr. Reagan in December of 2020 to perform a Valuation of Sneed, PLLC. By December of 2020, [Plaintiff] had refused to communicate with Mr. Reagan *for over fifteen (15) months despite repeated efforts from Mr. Reagan to communicate with [Plaintiff],* and despite numerous attempts from [Defendant's] attorney to facilitate communication between [Plaintiff] and Mr. Reagan.

53. The [c]ourt appointed a neutral appraisal [sic] to value the business and provide helpful information to the court regarding the January 5, 2015 date of separation value and the present day value of Sneed, PLLC. [Plaintiff], by his actions, prohibited Mr. Reagan from providing a present-day valuation of Sneed, PLLC. In fact, had [Defendant] not paid Mr. Reagan's invoice in February of 2020, the [c]ourt finds that it is unlikely that any appraisal—be it a Calculation of Value or Valuation—would have been completed with respect to Sneed, PLLC.

54. The [c]ourt finds that [Plaintiff] has unclean hands as it relates to his dealings with Mr. Reagan, specifically, [Plaintiff's] interference with Mr. Reagan's ability to produce a present date valuation of Sneed, PLLC.

. . . .

56. The [c]ourt finds that [Plaintiff] has not been prejudiced by [Defendant] hiring Mr. Reagan to perform a Valuation of Sneed, PLLC. [Plaintiff] had several opportunities to speak with Mr. Reagan regarding his company. [Plaintiff] provided Mr. Reagan with the underlying financials supporting Mr. Reagan's Valuation of Sneed, PLLC. [Plaintiff] was provided with a copy of Mr. Reagan's Valuation of Sneed, PLLC over four months prior to the trial of this matter.

These Findings were supported by evidence including emails and testimony documenting Plaintiff's repeated failures to respond to Reagan's attempts to contact him, pay Reagan's invoices as ordered by the trial court, or cooperate with Reagan in a timely manner. Together, these Findings make clear Plaintiff was a significant

impediment to Reagan's timely and accurate valuation of Sneed, PLLC. Given this evidence, the trial court was within its discretion to accept Reagan's testimony and valuation. Therefore, we conclude the trial court did err in allowing Reagan to testify, accepting his reports into evidence, and denying Plaintiff's Motion to Strike.

Plaintiff also challenges the methodology Reagan used in making his valuation of Sneed, PLLC. "[T]he trial court must determine whether the methodology underlying the testimony offered in support of the value of a marital asset is sufficiently valid and whether that methodology can be properly applied to the facts in issue." *Robertson v. Robertson*, 174 N.C. App. 784, 785-86, 625 S.E.2d 117, 119 (2005) (quoting *Walter v. Walter*, 149 N.C. App. 723, 733, 561 S.E.2d 571, 577-78 (2002)). "There is no single best method for assessing that value, but the approach utilized must be sound[.]" *Walter*, 149 N.C. App. at 733, 561 S.E.2d at 577 (citations and quotation marks omitted). This Court has stated when valuing a business, a trial court should consider: "(a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities." *Poore*, 75 N.C. App. at 419, 331 S.E.2d at 270.

At trial, Plaintiff did not object to Reagan being tendered as an expert witness in accounting, forensic accounting, and business valuation. Reagan testified in detail about the process he undertook to value Sneed, PLLC, including his analysis of revenue trends, cash flow, discount rates, goodwill, and depreciation expenses. He

also testified to his consideration of various methodologies and his reasoning for using the income approach and applying the capitalization of cash flows method to value Sneed, PLLC. Based on Reagan's testimony, his report, Plaintiff's testimony, and various exhibits submitted into evidence, the trial court made thorough Findings to support its valuation of Sneed, PLLC at $3,100,000.

"Absent a clear showing of legal error in utilizing [an] approach, this Court is not inclined to second guess the expert and the trial court, which accepted and approved this determination." *Sharp v. Sharp*, 116 N.C. App. 513, 529, 449 S.E.2d 39, 47 (1994). Plaintiff has not provided evidence or pointed to anything in the Record rising to the level of "a clear showing of legal error" that would cast doubt upon the trial court's determination. Moreover, Plaintiff had ample opportunity to work with Reagan and raise any concerns he had with the valuation. Instead, Plaintiff ignored Reagan's repeated attempts at communication. The alleged flaws with Reagan's chosen approach do not rise to the level of clear legal error. Therefore, we conclude the trial court did not err in finding Reagan's calculations to be credible and relying upon them in determining the value of Sneed, PLLC.

III.    Classification of Sneed PLLC

Plaintiff contends the trial court erred by classifying Sneed, PLLC as entirely marital property. Specifically, Plaintiff argues the trial court should have concluded that at least 89.9% of the value of Sneed PLLC was his personal goodwill, and at most 10.1% was enterprise goodwill. Thus, he contends his personal goodwill should be

treated as his own separate property.

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Blair v. Blair*, 260 N.C. App. 474, 478, 818 S.E.2d 413, 417 (2018) (quoting *Peltzer v. Peltzer*, 222 N.C. App. 784, 786, 732 S.E.2d 357, 359 (2012) (citation omitted)). "The determination of the existence and value of goodwill is a question of fact and not of law[.]" *Poore*, 75 N.C. App. at 421, 331 S.E.2d at 271. "The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary. The trial court's findings need only be supported by substantial evidence to be binding on appeal." *Peltzer*, 222 N.C. App. at 786, 732 S.E.2d at 359 (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

As an initial matter, under our statutes, "[i]t is presumed that all property acquired after the date of marriage and before the date of separation is marital property[.]" N.C. Gen. Stat. § 50-20(b)(1) (2021). Contrary to Plaintiff's assertion, our courts have consistently declined to draw a distinction between personal and enterprise goodwill. This Court addressed goodwill in a closely held corporation in *Poore*, 75 N.C. App. 414, 331 S.E.2d 266. In *Poore*, this Court addressed whether the trial court erred in valuing a defendant's professional association—a private, solo

dental practice he had incorporated—including goodwill. There, the Court stated that although goodwill is "controversial and difficult to value," it is clear "that goodwill exists, that it has value, and that it has limited marketability." *Id.* at 420, 331 S.E.2d at 271 (citations omitted). There, this Court held "[i]n valuing the professional association, the court should clearly state whether it finds the practice to have any goodwill, and if so, its value, and how it arrived at that value." *Id.* at 422, 331 S.E.2d at 272. Further, "We agree that goodwill is an asset that must be valued and considered in determining the value of a professional practice for purposes of equitable distribution." *Id.* at 420-21, 331 S.E.2d at 271. Thus, goodwill may constitute part of the value of a marital asset, which is, in turn, subject to equitable distribution.

Here, the trial court made the following relevant Findings of Fact:

45. In arriving at the value of Sneed, PLLC, the [c]ourt considered evidence concerning the goodwill of the business. The [c]ourt made its determination of the existence of goodwill using the assistance of Mr. Reagan's expert testimony.

46. Mr. Reagan testified to using the Multi-Attribute Utility Method to assess goodwill existing in Sneed, PLLC, and after applying this methodology, Mr. Reagan testified to his conclusions of personal and business goodwill existing in Sneed, PLLC. The [c]ourt has accepted this testimony and methodology and determines that the value of Sneed, PLLC's goodwill as of January 5, 2015 was $2,990,757 with $302,436 representing enterprise good will [sic] of Sneed, PLLC and $2,688,321 representing personal goodwill.

47. The [c]ourt heard from both parties during the trial, and the [c]ourt finds that the testimony of the parties supports the

- 13 -

goodwill calculations as made by Mr. Reagan and accepted by this
[c]ourt.

These Findings are supported by competent evidence, including Reagan's report.

Under the equitable distribution framework, these Findings support the trial court's

Conclusion that Defendant was entitled to a distributive award of $1,550,000

representing her share of Sneed, PLLC.[2]  The trial court, in line with our precedent,

properly acknowledged the goodwill in Sneed, PLLC constituted marital property

subject to distribution.  We, therefore, affirm the trial court's classification.

IV.    Decrease in Value of Sneed PLLC

"The standard of review on appeal from a judgment entered after a non-jury

trial is whether there is competent evidence to support the trial court's findings of

fact and whether the findings support the conclusions of law and ensuing judgment."

*Blair*, 260 N.C. App. at 478, 818 S.E.2d at 417 (citation omitted).  This Court applies

an abuse of discretion standard, upholding the trial court's valuation if it "is a sound

valuation method, based on competent evidence, and is consistent with section 50-

---

[2] Plaintiff's argument regarding the value of goodwill attributable to himself would properly have been an argument made for unequal distribution.  Under N.C. Gen. Stat. § 50-20(c), if a trial court determines an equal division of marital property is not equitable, then it shall consider various factors, including, among others, "[t]he difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party." N.C. Gen. Stat. § 50-20(c)(10) (2021). Moreover, the parties expressly agreed to a process whereby all of the marital property apart from the law firm would be distributed through equitable distribution, while the classification and valuation of Sneed, PLLC would be addressed by the trial court in this proceeding.  Plaintiff makes no argument here that an equal distribution of the law firm (or the entirety of the marital and divisible estates) was not equitable.

21(b)." *Ubertaccio v. Ubertaccio*, 161 N.C. App. 352, 357, 588 S.E.2d 905, 909 (2003).

Under our statutes, "[d]ivisble property and divisible debt shall be valued as of the date of distribution." N.C. Gen. Stat. § 50-21(b) (2021). However,

> [t]he requirements that the trial court (1) classify and value all property of the parties, both separate and marital, (2) consider the separate property in making a distribution of the marital property, and (3) distribute the marital property, necessarily exist *only when evidence is presented to the trial court which supports the claimed classification, valuation and distribution.*

*Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990). This Court in *Miller* noted the parties had "ample opportunity to present evidence and have failed to do so[,]" and reasoned that "remanding the matter for the taking of new evidence, in essence granting the party a second opportunity to present evidence, would only protract the litigation and clog the trial courts with issues which should have been disposed of at the initial hearing." *Id.*

Here, neither party offered a specific valuation of Sneed, PLLC at the date of distribution based on credible evidence. Defendant offered no evidence of divisible property nor of the value of the law firm. For his part, Plaintiff testified the present value of the law firm as of the date of trial was "a negative value." However, the trial court expressly stated: "I found Mr. Reagan and his evaluations to be credible and I do not find Plaintiff's offer on the value or negative value of [Sneed, PLLC] to be credible. . . I do not find that Plaintiff has provided the [c]ourt with any credible option for the value of the business." Accordingly, in its Order, the trial court made the

following Finding of Fact:

> 40. [Plaintiff] testified that Sneed, PLLC held little value over and above the personal reputation and efforts of [Plaintiff]. The [c]ourt received evidence from [Plaintiff] concerning the performance of Sneed, PLLC from its inception in 2011 through the date of trial. While the court can see a decline in income of Sneed, PLLC since the date of separation, [Plaintiff] has failed to provide the [c]ourt with any credible value of Sneed, PLLC as of the date of separation or as of the date of trial. . .

In the absence of credible evidence supporting the value of an asset, the trial court is not obligated to make specific findings as to value. *Gratsy v. Gratsy*, 125 N.C. App. 736, 739, 482 S.E.2d 752, 754, *rev. denied*, 346 N.C. 278, 487 S.E.2d 545 (1997). Thus, without credible evidence from either party as to the value of Sneed, PLLC after the date of separation, the trial court properly valued the law firm based on the competent evidence before it. Therefore, the trial court did not abuse its discretion in valuing Sneed, PLLC.

V.    Motion to Reopen Evidence

"The trial court has discretionary power to permit the introduction of additional evidence after a party has rested." *State v. Jackson*, 306 N.C. 642, 653, 295 S.E.2d 383, 389 (1982) (citations omitted). "Whether the case should be reopened and additional evidence admitted [is] discretionary with the presiding judge." *McCurry v. Painter*, 146 N.C. App. 547, 553, 553 S.E.2d 698, 703 (2001) (quoting *Smith Builders Supply, Inc. v. Dixon*, 246 N.C. 136, 140, 97 S.E.2d 767, 770 (1957) (citations omitted)). "Because it is discretionary, the trial judge's decision to allow

the introduction of additional evidence after a party has rested will not be overturned absent an abuse of that discretion." *Id.* An abuse of discretion is found "only when the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision." *Manning v. Anagnost*, 225 N.C. App. 576, 579, 739 S.E.2d 859, 861 (2013) (quoting *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006)).

Plaintiff argues when there is a delay between the close of evidence and entry of judgment in an equitable distribution case that is "an extensive delay . . . it would be consistent with the goals of the Equitable Distribution Act that the trial court allow the parties to offer additional evidence as to any substantial changes in their respective conditions or post-trial changes, if any, in the value of items of marital property." *Wall*, 140 N.C. App. at 314, 536 S.E.2d at 654. Plaintiff contends the delay here was prejudicial, and consequently the trial court erred by denying his Motion to Reopen Evidence. We disagree.

Here, the close of evidence in the equitable distribution matter occurred 10 December 2021. The trial court issued its ruling on 13 July 2022, approximately seven months later. Since *Wall*, this Court has addressed delays and concluded reopening the evidence was not warranted, even in some cases of extensive delays. *See e.g.*, *White v. Davis*, 163 N.C. App. 21, 26, 592 S.E.2d 265, 269, *disc. review denied*, 358 N.C. 739, 603 S.E.2d 127 (2004) (concluding a four-month delay was not prejudicial); *Britt v. Britt*, 168 N.C. App. 198, 202-03, 606 S.E.2d 910, 912-13 (2005)

(sixteen-month delay did not necessitate a new trial); *Nicks v. Nicks*, 241 N.C. App. 487, 510-11, 774 S.E.2d 365, 381-82 (2015) (four and a half-month delay did not warrant a new trial).

In *Britt*, this Court articulated three factors to consider in determining whether a delay was prejudicial: (1) whether the delay was more than *de minimis*; (2) whether there were "potential changes in the value of marital or divisible property between the hearing and entry of the equitable distribution order"; and (3) whether "potential changes in the relative circumstances of the parties warranted additional consideration by the trial court." 168 N.C. App. at 202, 606 S.E.2d at 912-13.

Plaintiff's Motion to Reopen the Evidence alleged his business was negatively affected by the Covid-19 pandemic, changes in "current market conditions" and the loss of "key personnel"; he suffered an "involuntary decrease in the revenue, income and/or profitability of his business"; and "involuntary changes" occurring after trial resulted in the decrease in value of Sneed, PLLC. However, Plaintiff's arguments ignore both the fact the equitable distribution trial was heard in December 2021, months after the onset of the Covid-19 pandemic, and none of the changes to his business bore any relation to the delay in entering the Equitable Distribution Order. The consistent teaching of our precedent is there is no abuse of discretion in denying a motion to reopen evidence where a party fails to "identify any way that the delay resulted in any prejudice to him." *Nicks*, 241 N.C. App. at 511, 774 S.E.2d at 381. Accordingly, we conclude the trial court did not abuse its discretion in denying

Plaintiff's Motion to Reopen Evidence.

## VI. Child Support Credit

Plaintiff contends the trial court erred by failing to credit him for overpayment of child support. On 1 July 2020, the trial court entered an Order Re: Motion to Modify Child Support. That Order provided Plaintiff had overpaid in child support by $10,000 since August 2019 and stated the matter "shall be addressed at further court proceedings and court orders."

The issues in this case, and the underlying Orders from which Plaintiff appeals, are solely related to the distribution of the marital estate. Child support is a separate issue which is properly addressed in a child support proceeding in district court.

## VII. Distributive Award

Plaintiff contends the trial court erred in calculating the distributive award to Defendant. Plaintiff relies entirely on his previous arguments, asserting the distributive award was incorrect because it improperly determined Plaintiff's personal goodwill in Sneed, PLLC was marital property and failed to include the decrease in the value of Sneed, PLLC occurring after the date of separation. For the reasons above, we have already rejected these arguments.

Plaintiff's contention is the trial court's Finding that he could afford distributive award payments of $8,611.11 per month was not supported by competent evidence. We disagree.

As the trial court noted, it received and reviewed "numerous admitted exhibits concerning [Plaintiff's] employment, income, and expenses, including but not limited to, [Plaintiff's] employee earnings records and his personal and business bank account statements." This evidence is sufficient to support the trial court's Finding that Plaintiff can afford the distributive award. Thus, the trial court did not err by distributing Defendant's share of Sneed, PLLC in the form of a distributive award. Therefore, Defendant was entitled to a distributive award of $1,550,000 payable in monthly installments of $8,611.11. Consequently, the trial court did not err in entering its equitable distribution of Sneed, PLLC.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's Equitable Distribution Order and Judgment and Order Denying Plaintiff/Husband's Motion to Strike and Motion to Reopen Evidence.

AFFIRMED.

Judges CARPENTER and GORE concur.