IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-295

Filed 18 June 2024

Mecklenburg County, No. 20CVD1262

CARMELO SAPIA, Plaintiff,

v.

LENA C. SAPIA, Defendant.

Appeal by defendant from order entered 22 December 2022 by Judge Tracy H. Hewett in District Court, Mecklenburg County. Heard in the Court of Appeals 3 October 2023.

*No brief filed for plaintiff-appellee.*

*Access to Justice Project, by Melissa J. Hordichuk, for defendant-appellant.*

STROUD, Judge.

Defendant Lena Sapia appeals from an order for equitable distribution. We affirm in part and reverse and remand in part.

## I.    Background

Plaintiff Carmelo Sapia ("Husband") and Defendant Lena Sapia ("Wife") were married in 2014 and separated "on or about October 16, 2019." Two children were born to the marriage. Husband filed a complaint on 22 January 2020 with claims for child custody, child support, postseparation support, alimony, equitable distribution, and attorney fees. On 3 February 2020, Wife filed her answer and counterclaims for

child custody, child support, and equitable distribution. On 18 March 2022, the trial court heard the equitable distribution claims and on 22 December 2022, the trial court entered an "Order for Equitable Distribution; Expenses for the Minor Children"[1] (capitalization altered) ("the Order"). On 4 January 2023, Wife filed a "Motion to Amend Judgment [-] Rule 59" (capitalization altered) seeking correction of some clerical errors and raising several "Issues of Law." This motion was not heard or ruled upon by the trial court. Wife then filed notice of appeal from the Order on 20 January 2023.

## II.     Observations Concerning this Appeal

Review of this appeal is complicated by several problems. We first note that our record does not include the final pretrial order, although according to the transcript, the trial court entered a pretrial order and the parties stipulated to the classification, valuation, and distribution of many items of property and debts. We note that pretrial orders are required by North Carolina General Statute Section 50-21(d) in equitable distribution cases. *See* N.C. Gen. Stat. § 50-21(d) (2023). Mecklenburg County's Family Court Rules also require a signed, final pretrial order. *See* Local Rules of Domestic Court, Mecklenburg Cty., 13.5 (Aug. 21, 2017) ("The Final Pretrial Order (FPTO) shall be entered using Form CCF-38 or Form CCF-38A.

---

[1] Despite the title, the Order addresses only equitable distribution. The reference to "expenses for the minor children" in the title of the order may arise from the fact that medical bills of the minor children were included in the distribution as a marital debt.

If the Parties/attorneys fail to file the FPTO by the date designated by the Judge, the Parties/attorneys may face sanctions that could include shortened time for presentation of evidence by one or both Parties, monetary sanctions, or other sanction deemed appropriate given the circumstances of the case. The signatures of the Parties on the Final Pretrial Order shall be acknowledged before a Notary Public or taken upon oath before the Courtroom Clerk."). The pretrial order sets out the issues the parties have agreed upon and the issues to be determined by the trial court in an equitable distribution hearing.

In addition to the absence of the pretrial order, for the first 34 pages of the transcript the trial court and counsel for both parties discussed the stipulations on various items of property and issues which may or may not have been part of the pretrial order, but our record does not include the document used during this colloquy, so we are unable to understand much of the discussion. *See* N.C. R. App. P. 9(a)(1)j ("(1) . . . . The printed record in civil actions and special proceedings shall contain: . . . . j. copies of all other documents filed and statements of all other proceedings had in the trial court *which are necessary to an understanding of all issues presented on appeal* unless they appear in another component of the record on appeal." (emphasis added)). For example, the parties and trial court often refer to items apparently by schedule and line number, such as B1 or J12, but without the document, these designations are meaningless to us. Ultimately, it appears the parties resolved many matters before beginning the presentation of evidence to

address the matters they had not agreed upon. In addition, from the transcript, it seems the parties filed equitable distribution affidavits and financial affidavits.[2] These affidavits would have listed the items of property and debts and the parties' contentions as to classification, valuation, and distribution of these items, and some affidavits are discussed during the hearing, but no affidavits are in our record on appeal.[3] In addition, the parties apparently resolved the claims of alimony, child custody, and child support, according to the transcript, leaving only equitable distribution to be heard. In violation of Rule 9(a) of the North Carolina Rules of Appellate Procedure, Wife's brief also refers to at least one document which was not included in our record, a Consent Order for Permanent Child Custody and Attorneys Fees. *See In re L.B.*, 181 N.C. App. 174, 185, 639 S.E.2d 23, 28 (2007) ("Matters discussed in the brief outside the Record are not properly considered on appeal since the Record imports verity and binds the reviewing court." (citations and quotation marks omitted)).

The hearing was held by WebEx, and during the questioning of witnesses and testimony, counsel and the parties referred frequently to a "spreadsheet" listing the

---

[2] Each party is required by North Carolina General Statute Section 50-21(a) to file and serve equitable distribution inventory affidavits "listing all property claimed by the party to be marital property and all property claimed by the party to be separate property, and the estimated date-of-separation fair market value of each item of marital and separate property." N.C. Gen. Stat. § 50-21(a) (2023).

[3] Other affidavits mentioned during the testimony are an "affidavit from her father" about a gift and an affidavit about "the life insurance" which apparently deals with Wife's aunt's life insurance proceeds intended to be distributed to "her nephews or great nephews or something like that." These affidavits are not in our record or in the 9(d) supplement.

property and debts in contention. It appears that the parties, counsel, and trial court were viewing this spreadsheet on their computers and referring to it during the hearing. At the beginning of direct examination of Wife by Husband's counsel, he asked if she has "a copy of the spreadsheet that we're kind of going off." She asks for the exhibit number, and he stated, "It's not an exhibit. It's an independent spreadsheet." According to the transcript, Wife's counsel then sent Wife an Excel spreadsheet and she then referred to this during her testimony. But as best we can tell, this "spreadsheet" was not introduced as an exhibit and is not in our record on appeal or the Rule 9(d) supplement. So again, we are unable to understand some of the testimony because we do not have the benefit of the "spreadsheet" used during the hearing.

Our confusion continues based upon a "Motion to Amend Judgment [-] Rule 59" filed by Wife on 4 January 2023. This motion was included in our Record on appeal, although the trial court never ruled upon it. The motion alleges "[t]here are numerous clerical issues in the Judgment, many of which were addressed in Judge Hewett's final markup. (Markup). A copy of the Markup is attached hereto as Exhibit A." There is no Exhibit A attached to the motion in our printed record on appeal, but there is a document which appears to be a draft of the Order with handwritten notations in the Rule 9(d) supplement. Exhibit A includes notations going far beyond clerical errors to substantive changes to the proposed order. Based upon the record, we cannot tell who made the handwritten notations on the "Exhibit A" document or

when those notations were made. The document is identified in the Index of the Rule 9(d) supplement as "Exhibit A to Defendant-Appellant's Motion to Amend Judgment – Judge's Markup of Order." But the document itself does not indicate who made the notations on the draft of the Order. And even if we accept Wife's representation that the trial court made these notations, these notations would not affect our review. "[A]n order is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." *Abels v. Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737-38 (1997); *see also* N.C. Gen. Stat. § 1A-1, Rule 58 (2023). To the extent Wife's arguments on appeal rely upon any notations upon "Exhibit A," we cannot address these arguments because we must confine our review to the filed, signed Order from which Wife appealed.

As a final complication, the "Standards of Review" section of Wife's brief lists several standards of review. She notes that findings of fact must be supported by competent evidence and conclusions of law are reviewed *de novo*. She also states that a trial court's "decisions may be reversed upon a manifest abuse of discretion" and "failure to comply with the provisions of the state's equitable distribution statute[,]" citing *Nix v. Nix*, 80 N.C. App. 110, 112, 341 S.E.2d 116, 118 (1986), and *Pott v. Pott*, 126 N.C. App. 285, 289, 484 S.E.2d 822, 826 (1994). These statements of law are all generally correct, but Wife's arguments mostly fail to connect the issues with any particular standard of review. To the extent her arguments clearly identify a challenged finding of fact or conclusion of law, we will generously apply the

appropriate standard of review for that issue since she technically mentions the standards of review in the brief, in very minimal compliance with North Carolina Rules of Appellate Procedure Appendix E. *See* N.C. R. App. P. Appendix E.

Because of Wife's violation with North Carolina Rule of Appellate Procedure 9 by her failure to include the equitable distribution affidavits, the final pretrial order, and the spreadsheet used during testimony, while including extraneous information such as the Motion to Amend and Exhibit A, we have considered whether this noncompliance rises to the level of a "substantial failure or gross violation" of the appellate rules justifying dismissal of the appeal. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.*, 362 N.C. 191, 200, 657 S.E.2d 361, 366-67 (2008) ("In determining whether a party's noncompliance with the appellate rules rises to a level of a substantial failure or gross violation, the court may consider, among other factors, whether and to what extent review on the merits would frustrate the adversarial process." (citations omitted)). Based upon the limited issues presented by Wife's appeal, we do not hold dismissal is appropriate, but we repeat this Court's previous admonition from *Hill v. Hill*:

> While these rules violations are substantial, and come very close to meriting dismissal of the appeal, we conclude that this appeal should not be dismissed. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.*, 362 N.C. 191, 200, 657 S.E.2d 361, 366 (2008) (holding that "only in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate."). However, the manner in which this appeal has been presented fundamentally hampers our review. The Court of Appeals

sits as a reviewer of the actions of the trial court. In that role, we must be impartial to all parties. It is not our role to advocate for a party that has failed to file a brief, nor is it our role to supplement and expand upon poorly made arguments of a party filing a brief. "It is not the role of the appellate courts to create an appeal for an appellant. The Rules of Appellate Procedure must be consistently applied; otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Abbott v. N.C. Bd. of Nursing*, 177 N.C.App. 45, 48, 627 S.E.2d 482, 484-85 (2006) (citations omitted). We address only those issues which are clearly and understandably presented to us. On issues that require remand to the trial court, we will attempt to be clear and concise as to the perceived defect, and what the trial court needs to do upon remand to correct these defects.

We acknowledge that our trial courts are overworked and understaffed. However, it is ultimately the responsibility of the trial judge to insure that any judgment or order is properly drafted, and disposes of all issues presented to the court before the judge affixes his or her signature to the judgment or order. This is particularly true in a complex case, such as one involving the equitable distribution of marital property.

*Hill v. Hill*, 229 N.C. App. 511, 514-15, 748 S.E.2d 352, 356 (2013) (ellipses omitted).

Ultimately, we have determined Wife's noncompliance is not so substantial that it leaves Husband "without notice of the basis upon which" this Court may rule. *Id*. In addition, Wife has not challenged any of the findings of fact as unsupported by evidence; her challenge to Finding 16 addresses a clerical error. With these limitations and caveats in mind, we will address Wife's issues on appeal.

### III. Analysis

Wife makes several arguments on appeal regarding the valuation and

classification of property.  We will address each argument in turn.

### 1.  Standard of Review

> Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, will establish an abuse of discretion.

> Although this is a "generous standard of review," the trial court must still comply with the requirements of N.C. Gen.Stat. § 50-20(c), which sets out a three step analysis:

> First, the court must identify and classify all property as marital or separate based upon the evidence presented regarding the nature of the asset. Second, the court must determine the net value of the marital property as of the date of the parties' separation, with net value being market value, if any, less the amount of any encumbrances. Third, the court must distribute the marital property in an equitable manner.

*Id*. at 515, 748 S.E.2d at 356 (citations omitted).

### 2.  Finding No. 16 Regarding Mortgage Debt

Wife first contends that the "incontrovertible competent evidence" shows that the mortgage on the parties' marital home was in only her name as of the date of separation so the trial court "either made an arbitrary, unsupported factual finding or a clerical error."  The trial court found:

> 16. As the time of the date of separation, the former marital residence was encumbered by a mortgage held by Quicken Loan, in both Husband and Wife's names, in the amount of $321,297.41.

Wife is correct that the evidence shows the mortgage was only in her name, both at the date of separation and at the time of trial. However, whose name the mortgage was in as of the date of separation does not affect the classification or valuation of the mortgage and it did not affect the trial court's valuation of the debt, conclusions of law, or distribution. *See Atkins v. Atkins*, 102 N.C. App. 199, 208, 401 S.E.2d 784, 789 (1991) ("The fact that the debt is in the name of one or both of the spouses is not determinative of the proper classification." (citation omitted)). This Court has defined "marital debt" as "one incurred during the marriage and before the date of separation by either spouse or both spouses for the joint benefit of the parties." *Huguelet v. Huguelet*, 113 N.C. App. 533, 536, 439 S.E.2d 208, 210 (1994). Thus, this is a clerical error, and we will remand for correction of Finding No. 16 to remove the words "both Husband and."

### 3. *Classification of Wife's Student Loans*

Wife contends "the trial court erred in classifying $34,297.35 of [Wife's] student loans as her separate property because the court failed to make adequate factual findings and there is overwhleming (sic) evidence in the record to support a classification of marital property." Wife notes that classification of property is a conclusion of law and that conclusions of law must be supported by adequate findings of fact, citing *Hunt v. Hunt*, 112 N.C. App. 722, 729, 436 S.E.2d 856, 860 (1993).

> The standard of review for a trial court's classification of property during equitable distribution is whether there

was competent evidence to support the trial court's
findings of fact and whether its conclusions of law were
proper in light of such facts. The trial court's findings of
fact are binding on appeal as long as competent evidence
supports them, despite the existence of evidence to the
contrary. . . . While findings of fact by the trial court in a
non-jury case are conclusive on appeal if there is evidence
to support those findings, conclusions of law are reviewable
*de novo*.

*Roberts v. Kyle*, 291 N.C. App. 69, 74-75, 893 S.E.2d 482, 486 (2023) (citations and

quotation marks omitted).  As Wife challenges the trial court's classification of the

student loans, we will review *de novo*.

Wife does not identify any findings of fact she contends are not supported by

the evidence, so the trial court's findings regarding the student debt are binding on

this Court.  *See id*. at 74, 893 S.E.2d at 486.

The trial court found:

59. During the course of the marriage, Wife incurred
student loan debt in her individual name with NelNet.
Some of the student loan debt was "refunded" by Wife's
educational institutions and use for living purposes for the
mutual benefit of the marriage/family. The portion of
Wife's student loan debt which was "refunded", and not
used toward Wife's educational expenses is a marital debt
in the amount of ($29,500.67), which shall be distributed
equally between parties. The remaining portion of the
student loan debt to be distributed to Wife as her separate
debt.

This finding of fact was not challenged by Wife.  But Wife contends the "full

$63,798.02" should have been classified as marital debt and that the trial court should

have made additional findings of fact to support its classification and valuation.  She

also contends Husband "failed to meet this burden of proof" to rebut the presumption that her student debt was a marital debt. But Wife has the burden of proof on this issue backwards: "The party *claiming the debt to be marital* has the burden of proving the value of the debt on the date of separation and that it was incurred during the marriage for the joint benefit of the husband and wife." *Miller v. Miller*, 97 N.C. App. 77, 79, 387 S.E.2d 181, 183 (1990) (emphasis added) (citations and quotation marks omitted). Wife claims the "full amount" of the student loan is marital, so *she* had the burden to prove this.

Wife seems to contend that the trial court erred as a matter of law by classifying a portion of her student loan debt as separate based upon *Warren v. Warren*, 241 N.C. App. 634, 638, 773 S.E.2d 135, 139 (2015). She also contends that "like in *Warren*, the parties have conceded that [Wife's] salary increased significantly during the marriage as a result of [her] return to school, and the parties substantially enjoyed the benefit of [her] increased salary for thirty-four months before they separated[.]"

We first note that *Warren* does not hold that all student debt incurred during a marriage *must* be classified as marital debt. *See id.* at 637-38, 773 S.E.2d at 138. In *Warren*, the findings of fact supported that classification. *See id.* at 639, 773 S.E.2d at 139. In *Warren*, all the plaintiff-wife's student debt was incurred during the marriage and "both parties testified that they had agreed plaintiff would return to school to obtain her occupational therapy degree, and both were aware student loans

were required to accomplish this goal." *Id*. at 638, 773 S.E.2d at 138. There was also evidence the loans were used for both educational expenses and "general living expenses such as groceries," medical expenses, children's activities, and other household expenses. *Id*. The husband also conceded the "marriage benefited from plaintiff's increased earning capacity for a period of twenty months." *Id*. This court concluded that

> since the student loan debt was incurred during the marriage, plaintiff presented substantial evidence demonstrating that the loan funds were used to benefit the family as well as satisfy her educational expenses. In addition, the marriage lasted long enough for the parties to substantially enjoy the benefits of plaintiff's newly-earned degree. Therefore, plaintiff satisfied her burden of proving that the debt was incurred for the joint benefit of both parties.

*Id*. at 639, 773 S.E.2d at 139.

Here, *Wife* had the burden to prove the full amount of her student loan debt was incurred for the benefit of the marriage. The trial court found that about half of her student debt was marital. The trial court's classification was consistent with *Warren*, as the facts in this case differ greatly from *Warren*.[4] *See generally id*. In *Warren*, all the wife's student loan debt was incurred during the marriage and the

---

[4] The spreadsheet or some other document used during the hearing apparently included information regarding the student debt. Husband's attorney noted that "number J14 is probably the second of two big items, and that's just the student loan debt of hers and I don't think – we're not going to be able to resolve that part, so you'll probably have to hear evidence on that. We say it's her separate, they say it's marital."

wife completed her education during the marriage. *See id.* Here, Wife began her education before the marriage, completed one degree during the marriage, and began work toward her master's degree but did not complete that degree before the separation. About one-third of her total debt was incurred either before or after the marriage. Wife contended all the loan disbursements during the marriage should be marital debt "[b]ecause the majority of those loans that were taken out were dispersed (sic) to me and paid for our everyday expenses, including our IVF." But Wife did not know how much of the $69,633.79 debt incurred during the marriage was used for educational expenses as opposed to living expenses during the marriage. Wife had attended five different schools over the years but did not know how much tuition she paid at the two schools she attended during the marriage while working on her bachelor's degree.

Nor did Husband here "concede" Wife's bachelor's degree caused her salary during the marriage to increase significantly, as she contends. Instead, he argued quite the opposite, as Wife already had a substantial income before she received her bachelor's degree. There was evidence her salary increased each year from 2014 through 2019, although she also had several lay-offs and job changes. In any event, the trial court found that a substantial portion of Wife's student loan debt, $29,500.67, was used for the mutual benefit of the marriage and family. The trial court's classification of Wife's student loan debt as partially separate and partially marital is supported by its findings of fact.

### 4. *Classification and Distribution of $10,053.40 Liability*

Wife argues that "the trial court erred in failing to properly identify the parties' $10,053.40 marital loan in distribution because the court made a clerical error in its order."

The trial court found:

> 37.     Based on the stipulations of the parties, the Court finds that the proceeds from the Mutual of Omaha life insurance policy, in the amount of $10,053.40 was received by Wife for the benefit of Wife's nephews. Within thirty (30) days from the date of the entry of this Order, Wife shall provide documentation to Husband substantiating that Wife paid the proceeds from the Mutual of Omaha life insurance policy, in the amount of $10,053.40, to Wife's nephews.

Wife contends "the parties stipulated at trial that the $10,053.40 marital loan taken against the proceeds of a life insurance policy held in trust by [Wife] would be classified as a marital debt and distributed in full to" Wife. To support her contention of a stipulation to the classification, valuation, and distribution of this debt, Wife cites pages of the transcript where the attorneys were discussing the stipulations as to various items of property and debts before beginning the hearing, and as noted above, our record does not include the documents they were referring to. But it is apparent from the discussion that the stipulation regarding the $10,053.40 life insurance proceeds was not addressed in the missing documents; counsel for the parties discussed how to classify and distribute this item and the transcript addressed the stipulation sufficiently for us to consider her argument. *See Wirth v. Wirth*, 193 N.C.

App. 657, 662, 668 S.E.2d 603, 607 (2008) ("While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision, and it is essential that they be assented to by the parties or those representing them." (citation omitted)).

> MR. MEREDITH: And then moving down to the life insurance. I've got that affidavit. He doesn't know about that. I haven't asked him about that. I guess assuming that to be the case -- basically, Your Honor, this was -- they sent us an affidavit yesterday or last night that said that this money was -- I think it was her aunt that passed away, and she was the beneficiary of this, of this life insurance, and that that it was -- so there wasn't a trust set up, but that she's kind of the executor and that half of this money goes to what would be I guess her nephews or great nephews or something like that.

> MS. HORDICHUK: No. All of it not half of it, all of it.

> MR. MEREDITH: Well, half goes to each.

> MS. HORDICHUK: Yeah. Right. Yeah.

> MR. MEREDITH: Well, half goes to each. So I'll talk to him about that, and the stipulation made would just be that she utilizes those funds for that and then we just move on.

> MS. HORDICHUK: But, Eric, just to be clear, this is also part of the CD loan, so that money doesn't exist anymore. What happened was they cashed the check. They had put aside 3,000 about into their bank account because they had thought that they would have to pay a tax on it, and it ended up that they didn't have to pay the tax and that money got spent and it was in the joint account. And then they took the $7,000 and put it in a CD, so at least it accrued some interest. And then in 2018 your client had wanted --they took it out. So they took the funds out of the CD, and I have all the documentation of that. So that's all, you know, a loan, and he was referring to it as a $7,000

loan, but really it's the full 10,000 and change because that was spent by both of the parties.

MR. MEREDITH: Okay. So we had stipulated on the next page that the CD loan with seven grand. How much is the actual loan then?

MS. HORDICHUK: It's that full check, 10,053.40.

MR. MEREDITH: So the idea is that they owe that back?

After the trial court and counsel had discussed other items on the spreadsheet, they took a break for counsel to discuss the possible stipulations with Husband and Wife. After court resumed, Husband's counsel reported their stipulation regarding "the life insurance proceeds."

MR. MEREDITH: So you have all the stipulations, Judge, and we can add to that B1, the BMW. My client would stipulate that that is her separate property, so that would be distributed to her. Again, the car's gone, but it's just the proceeds are distributed to her at a zero value. We stipulated to the distribution of C4, the BB&T checking account to my client at the 1760 number. *Down at the bottom, so the life insurance proceeds. What we're going to do is we're going to distribute that to Wife at the 10,000 figure, but it's going to be a negative. It's going to be a debt, and then that will eradicate the CD loan on J13.*

THE COURT: All right. Do you concur, Ms. Hordichuk?

MS. HORDICHUK: Yes, yeah.

THE COURT: All right.

(Emphasis added.)

The Order includes a table listing the trial court's description, classification, valuation, and distribution of the items of marital property and debts. The table in

the Order classifies the "Certificate of Deposit Loan" as a marital debt with a value of $0.00 and distributes this to Husband. This portion of the Order is in accord with the stipulation, since the parties agreed to "eradicate the CD loan." But the trial court should have then added an item to the table we will call the "life insurance liability" as a marital debt distributed to Wife. Based on the stipulation, the life insurance proceeds were not an item of property but instead this sum had become a marital debt. The "certificate of deposit" loan was "eradicated" since it reflected the same liability as the life insurance liability. Instead of paying the life insurance proceeds to the nephews, the parties had used the funds for their own expenses during the marriage, converting this amount to a marital debt owed to Wife's nephews, as reflected by the stipulation. As stated in the stipulation, "we're going to distribute that to Wife at the 10,000 figure, but it's going to be a negative. It's going to be a debt, and then that will eradicate the CD loan on J13." The trial court's finding failed to account for the part of the stipulation to treat the life insurance proceeds not as an item of property owed to the nephews but as a marital debt to be distributed to Wife. However, despite the language in Finding 37 and the life insurance liability not being listed in the table in the Order, based on our calculations the trial court properly considered the $10,000 life insurance liability in its distribution and allocated it to Wife as a marital debt.

Based upon the discussion in the transcript, it would be impossible for Wife to "provide documentation" she had paid the life insurance proceeds to the nephews

since the parties had instead used the proceeds for their own expenses during the marriage. And there was no stipulation that Wife would provide documentation of any payment to the nephews. Because Finding 37 treated the life insurance proceeds as an asset of the nephews that Wife needed to pay to them, Finding 37 is not consistent with the stipulation. However, as noted above, the trial court included the life insurance liability in the final distribution amount despite Finding 37 treating it as an asset belonging to the nephews instead of as a marital debt. According to the stipulation, the life insurance liability should have been included in the portion of the Order's table listing the parties' marital debts, in the amount of $10,053.40, assigned to Wife. We therefore reverse the Order as to Finding 37 and remand for the trial court to add findings clarifying the classification and distribution of this debt in accord with the stipulation.

### 5. *Distribution of Subordinate Lien on Marital Home*

Wife argues that "the trial court erred in distributing [Wife's] post-separation subordinate lien on the former marital residence as a positive divisible asset because it was inconsistent with the Court's valuation." She contends the trial court's distribution table "contradicted its own factual findings without any rational basis and erroneously decreased the amount of real property debt distributed to" Wife.

To understand the trial court's valuation and distribution of the debt on the marital home as shown in the distribution table, we must consider several findings of fact regarding the value of the home, the amount of the original mortgage debt,

and the amount of the subordinate lien. Wife does not challenge any of these findings

of fact as unsupported by the evidence, so they are binding on appeal. *See Roberts*,

291 N.C. App. at 74, 893 S.E.2d at 486. The trial court valued the marital home as

of the date of separation at $371,000.00 and $421,471.00, as of the date of

distribution. The trial court then found:

> 15. The former marital residence shall be distributed to Wife.
>
> 16. As the time of the date of separation, the former marital residence was encumbered by a mortgage held by Quicken Loan, in both Husband and Wife's names, in the amount of $321,297.41.
>
> 17. At the time of trial, the former marital residence was encumbered by a new loan held by Flagstar, in Wife's individual name.
>
> 18. Since the date of separation, Wife has alone paid for the mortgage encumbering the former marital residence. Wife further encumbered the former marital residence by way of a COVID-19 financial hardship program with Flagstar, allowing wife to place the loan in temporary forbearance. This loan deferral reduced equity in the home which shall be appropriately accounted for in the distribution of the marital.
>
> 19. Wife resumed making regular mortgage payments in February, 2022, and the mortgage remains current. The balance on the mortgage at trial was $351,898.59.
>
> 20. When Wife resumed making monthly mortgage payments in February, 2022, Flagstar submitted a standalone partial claim with the U.S. Department of Housing and Urban Development, in accordance with the hardship forbearance program established by the CARES Act, thereby allowing Wife's forbearance arrearages of ($46,219.74) to be placed in a zero-interest subordinate lien

against the former marital residence, which Wife will repay when the mortgage terminates.

21. Between the date of separation and trial, Wife paid a total of $16,364.57 towards the mortgage encumbering the former marital residence. Despite Husband's ability to pay, he did not contribute to paying the mortgage or taxes after the date of separation.

22. Wife alone has maintained and paid taxes on the former marital residence since the date of separation.

. . . .

41. As the time of the date of separation, the former marital residence was encumbered by a mortgage held by Mr. Cooper, in both Husband and Wife's names, in the amount of $321,297.41.

42. At the time of trial, the former marital residence was encumbered by a new loan held by Flagstar, in Wife's individual name*, in the amount of ($351,898.59), which includes the $46,219.74 forbearance loan.*

43. Since the date of separation, Wife has alone paid for the mortgage encumbering the former marital residence.

44. Wife further encumbered the former marital residence by way of a loan deferral such that she reduced the equity in the home, in the amount of $46,219.74 which protected the home foreclose. This additional encumbrance of ($46,219.74) which benefits Wife, should be appropriately accounted for in the distribution of the marital estate.

. . . .

66. Wife has maintained and paid the taxes on the former marital residence, she paid $16,364.57 toward the mortgage after the date of separation, and the deferment she secured kept the former marital residence from being foreclosed on during COVID years and the economic toll of the separation of the parties. The Court notes that the

deferment is being accounted for in the distribution of
assets so it is not being used to weigh against her in the
percentage of distribution.

(Emphasis added.)

The trial court then set out the distribution of the property and debts in table

form, including the home, original mortgage, and the post-separation lien as follows:

| Description of property | Class. | Distribute to H Value | Distribute to W value |
|---|---|---|---|
| [ ] Connecticut Avenue, Charlotte, North Carolina . . . | M | 0 | 421,471.00[5] |
| [6] | | 0 | (16,364.57) |
| TOTALS | | 0 | $405,106.43 |

. . . .

| DEBT REAL PROPERTY | | | |
|---|---|---|---|
| [ ] Connecticut Avenue, Charlotte, North Carolina | M | 0 | ($351,898.59)[7] |
| Loan forbearance by Wife | D | | $46,219.74 |
| TOTALS | | | (305,678.85) |

Wife's argument that the $46,219.74 should be shown as a "negative" instead

of a "positive" misinterprets the trial court's distribution table.  She contends the trial

---

[5] Finding of Fact 13 states this is the value of the marital home as of the date of distribution.

[6] This entry was not labelled but according to Finding of Fact 21, $16,364.57 was the amount of payments Wife made on the marital home between the date of separation and the date of trial.  By reducing the value of the marital home, the trial court gave Wife the benefit of these payments as a distributional factor as noted in Finding 66.

[7] This is the date of distribution balance of the mortgage according to Finding of Fact 19 and this amount includes the $46,219.74 forbearance loan.

court treated the lien as a "positive divisible asset" which is inconsistent with the trial court's valuation in Finding of Fact 44 which finds $46,219.74 as the "additional encumbrance" on the marital home. But the trial court found in Finding 42 that the total loan amount encumbering the home as of the date of trial as listed in the table "includes the $46,219.74 forbearance loan." Thus, in the table the trial court added $46,219.74 to the amount of the original mortgage debt on the home, for a total debt at the time of distribution of $351,898.59. Had the trial court listed the "loan forbearance by Wife" as a negative number in the table, as Wife argues, the total outstanding debt would have been increased to $398,118.33. This number would not be supported by the evidence, as the payoff statement in evidence showed the "amount due to payoff as of 03/31/22" was $351,898.59. The statement also shows this payoff amount includes the "unpaid advances" from the subordinate lien. Therefore, the trial court's table correctly reflects the amount of mortgage debt distributed to Wife as $305,678.85 and the distribution accounts for the $46,219.74 in accord with the findings of fact.[8]

### 6. Delay in Entry of Order

Wife argues "the trial court erred in failing to credit [Wife] for the additional $17,959.42 she paid toward the mortgage on the former marital residence after trial

---

[8] Wife also makes an argument in the alternative regarding the classification of the subordinate lien, but we will not address this argument as it would not benefit her for us to do so, and Husband has not appealed.

because the court took nine months to enter a final judgment and the change in property value during that time was substantial." Wife cites *Wall v. Wall*, 140 N.C. App. 303, 536 S.E.2d 647 (2000), in support of her argument, claiming that the nine-month delay between the trial and entry of the Order is "more than a *de minimis* delay" during which she continued to make payments on the mortgage on the home.

We first note Wife has conflated two arguments. First, she contends she should receive "credit" for the mortgage payments she made between trial and entry of the Order. She also contends, based on *Wall*, she is entitled to a "new distribution on remand" due to a "substantial change in the value of property subject to distribution."

We will address Wife's argument as to the delay first. The 19-month delay in *Wall* was more than twice the delay in this case. *See id.* at 314, 536 S.E.2d at 654. But even if we assume a nine-month delay is more than *de minimis*, Wife's argument fails because she has not demonstrated any prejudice from the delay in entry of the Order. This Court has addressed the need to demonstrate prejudice from the delay in entry of an order as discussed in *Wright v. Wright*:

> Finally, defendant argues that the trial court erred in rendering its equitable distribution judgment twenty-one months after the last evidentiary hearing. Specifically, defendant argues that the delay here requires the trial court to enter a new order after allowing the parties to offer additional evidence. We disagree.
>
> Defendant directs our attention to this Court's ruling in *Wall v. Wall*, 140 N.C.App. 303, 314, 536 S.E.2d 647, 654 (2000). In *Wall*, the defendant argued that his due process rights under both the United States Constitution and the

North Carolina Constitution were violated by a delay of nineteen months from the date of the trial to the entry of equitable distribution judgment. 140 N.C.App. at 313-14, 536 S.E.2d at 654. We concluded that "there is inevitably some passage of time between the close of evidence in an equitable distribution case and the entry of judgment," but that "a nineteen-month delay between the date of trial and the date of disposition is more than a *de minimis* delay, and requires that the trial court enter a new distribution order on remand." *Id.* at 314, 536 S.E.2d at 654.

However, subsequent to our ruling in *Wall* we addressed the same issue in *Britt v. Britt*, 168 N.C.App. 198, 606 S.E.2d 910 (2005). There, we determined that "*Wall* establishes a case-by-case inquiry as opposed to a bright line rule for determining whether the length of a delay is prejudicial." *Id.* at 202, 606 S.E.2d at 912. And that "since *Wall*, this Court has declined to reverse late-entered equitable distribution orders where the facts have revealed that the complaining party was not prejudiced by the delay." *Id.* We then found that "in *Wall*, potential changes in the value of marital or divisible property between the hearing and entry of the equitable distribution order warranted additional consideration by the trial court." *Id.* We then concluded that the plaintiff in *Britt* "made no argument that the circumstances that counseled in favor of reversing the order in *Wall* are present in the case *sub judice*." *Id.*

*Wright v. Wright*, 222 N.C. App. 309, 314-15, 730 S.E.2d 218, 222 (2012) (ellipsis and brackets omitted).

Wife's only argument of prejudice from the delay is that she continued to make mortgage payments for the nine months between the trial and entry of the Order. Of course, our record does not include any evidence Wife actually made these payments after the trial and she did not request the trial court to re-open the case to present

this evidence; she simply argues this number based upon the amount of the mortgage payments multiplied by the number of months. We will assume for purposes of argument she has continued to make her mortgage payments after the trial. But we fail to see how making these payments prejudiced Wife. According to unchallenged findings in the Order, Wife and the children have resided in the former marital home since the parties' separation, the mortgage is solely in her name, and the home was distributed to her. Presumably she would have continued to make mortgage payments on the home she owns and is living in no matter how quickly the trial court entered the equitable distribution order. She would also receive the benefit of living in the home and increased equity in the home from making these payments.

Wife's related argument that we should remand for the trial court to give her "credit" for the $17,959.42 in mortgage payments she claims to have paid fails for the same reason. Wife has not demonstrated any reason to remand for a new hearing or a new order to address any changes during the delay between the trial and entry of the Order.

### 7. *Distributive Award*

Wife's final argument is that the "trial court erred in ordering [Wife] to pay [Husband] a $44,420.40 distribtuive (sic) award because the court failed to cite any factual findings or legal conclusions to support a rebuttal of the presumption of in-kind distribution." She contends the trial court erred by failing to follow the statutory presumption of an in-kind distribution and making no findings of whether Wife "has

sufficient liquid assets to pay the distributive award."

The trial court's Order includes findings of fact addressing distributional factors under North Carolina General Statute Section 50-20(c) and concludes that an equal division is equitable; that conclusion is not challenged on appeal. However, the trial court did not make any findings of fact or conclusions of law about the presumption of an in-kind distribution and did not identify any liquid assets available to pay the distributive award. The only provision of the Order addressing the distributive award is in the decree:

> 3. Distributive Award. After considering the division of property, as set forth herein, it is necessary that Wife pay to Husband a distributive award to Husband in the amount of $44,420.40. Wife shall pay the distributive award, as provided herein, by making a cash lump sum payment directly to Husband in the amount of $44,420.40 within 180 days from the date of the entry of this Order.

It is apparent the trial court did "consider the division of property" as set out in the Order, and the only apparent way to accomplish an equal distribution is a distributive award. There was minimal liquid property available. The parties' main asset was the equity in the marital home.[9] Their financial accounts had minimal value, and the accounts distributed to Wife were valued at only $2,640.40. The parties had substantial credit card debt and those debts were also distributed to the parties as they had stipulated. But Wife is correct the trial court must make findings

---

[9] Accordingly, at the trial, much of the testimony and argument addressed Wife's ability to refinance the home or obtain a loan secured by the home to pay any potential distributive award.

to address the presumption of an in-kind distribution before ordering a distributive award:

> In 1997 N.C. Gen.Stat. § 50-20(e) was amended to create a rebuttable presumption that an in-kind distribution of property is equitable. In creating this presumption the General Assembly discarded the impracticality standard. The trial court's order, in this case, is devoid of any findings of fact or conclusions of law pertaining to this presumption. The trial court did not follow the statutory presumption and made a distributive award. When there is a presumption in the law, the finder of fact is bound by the presumption unless it finds that the presumption has been rebutted. We hold that in equitable distribution cases, if the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination.
>
> Further, N.C. Gen. Stat. § 50-20(c) enumerates distributional factors to be considered by the trial court. One of those factors is the liquid or nonliquid character of all marital property and divisible property. The trial court is required to make findings as to whether the defendant has sufficient liquid assets from which he can make the distributive award payment.
>
> In the instant case, the trial judge only listed one source of liquid assets from which defendant could pay the distributive award. That liquid asset, held in the trust account of defendant's attorney, totaled $5,219.47. This amount, as Judge Keever stated in her order, is only partial payment for the distributive award of $25,000.00. Judge Keever made no findings as to whether defendant had other sufficient liquid assets to pay the distributive award. Although defendant may in fact be able to pay the distributive award, defendant's evidence is sufficient to raise the question of where defendant will obtain the funds to fulfill this obligation.

> We therefore reverse the trial court on this assignment of error, and remand this matter for additional findings of fact on whether the presumption of an in-kind distribution has been rebutted and whether defendant has sufficient liquid assets to pay the distributive award to plaintiff, consistent with this opinion.

*Urciolo v. Urciolo*, 166 N.C. App. 504, 506-07, 601 S.E.2d 905, 908 (2004) (citations, quotation marks, and brackets omitted).

As in *Urciolo*, the trial court's findings fail to address "whether [Wife] has sufficient liquid assets from which" she can pay "the distributive award payment." *Id.* Nor did the trial court make any findings or conclusions to support the rebuttal of the in-kind distribution presumption. *Id.* We therefore must reverse the distributive award and "remand this matter for additional findings of fact on whether the presumption of an in-kind distribution has been rebutted and whether [Wife] has sufficient liquid assets to pay the distributive award to [Husband], consistent with this opinion." *Id.*

### 8. *Discrepancies between the Findings and the Table in the Order*

Since we must remand for entry of a new order as discussed above, we also note that the trial court's calculations of the total debt on the table in the Order includes discrepancies in the total debt assigned to Wife. The amounts, classifications, and distribution of the debts as shown in the table are correct, based on the unchallenged Findings of Fact numbers 47 through 61, except for the omission

of the life insurance liability.[10] However, the total shown for Wife's share of credit card debt is ($363.032), which is not a currency value. As discussed above, the trial court did not include the life insurance liability in the table in its Order. Despite this omission in the table, the trial court still included the life insurance liability in its distributive award, as all the debts allocated to Wife, including the mortgage and life insurance liability, equal $363,032.05, which is presumably the number the trial court included in the table for Wife's debts where it instead stated "$363.032[.]" Adding to the confusion, the "363.032" number listed as the sum of the debts is listed in the portion of the table titled "Debt Credit Cards," but the items listed in that section do not add up to $363,062.05, since the mortgage debt and car loan are listed in another section of the table and the life insurance debt was not listed in the table at all. But the trial court's math was correct, even if it was not clearly stated in the table or Order, since $363,062.05 is the total of the marital debts distributed to Wife, including the mortgage, car loan, credit cards, and life insurance liability. Using the values as stated in the findings of fact, we calculate the total net marital estate as $21,944.78. According to the Order, the property distributed to Wife is valued at $418,424.82 and the property distributed to Husband is valued at $2,090.37. Wife is responsible for marital debts of $363,032.05, and Husband is responsible for marital

---

[10] Finding of Fact 58 is repeated in Finding number 60 but the debt amount is stated correctly in the table. Findings of Fact 57 and 60 both address the same debt, the REACH embryo debt; they are worded differently but state the same amount of debt and it is stated correctly in the table.

debts of $35,538.36. To equalize the distribution based upon these values, a distributive payment from Wife to Husband would be $44,420.38, which is essentially the distributive award the trial court entered of $44,420.40. Thus, upon remand, the trial court shall clarify the table section in the Order to correctly show the amounts of the debts and distribution of the debts to each party and the total net value of the marital estate. We note that while a table such as the one included in the trial court's Order is very helpful in an equitable distribution order, we urge the trial court to be careful to make sure the entries in the table match up to the findings of fact and that the mathematical calculations in the table are correct. We also admonish Wife for her failure to examine the Order carefully enough to discover that several of the issues she raised on appeal were simply misinterpretations of the numbers in the Order.

### 9. *Instructions on Remand*

Since there has been no challenge to an equal distribution of the marital estate on appeal, the distribution on remand remains equal and we have affirmed the trial court's classification, valuation, and distribution of the marital property. On remand, the trial court shall correct the clerical error in Finding 16 and add a finding of fact and table entry as to the stipulated classification and distribution of the life insurance liability in Finding 37. In addition, we "remand this matter for additional findings of fact on whether the presumption of an in-kind distribution has been rebutted and whether defendant has sufficient liquid assets to pay the distributive award to

plaintiff, consistent with this opinion." *Id.* at 507, 601 S.E.2d at 908. On remand, if either party requests to present additional evidence limited to the issue of the findings as to the distributive award, the trial court shall hold a hearing to receive evidence and argument limited to this issue. But this mandate does not limit the trial court's discretion in how to accomplish the equal distribution of the net marital estate on remand. The trial court is not required to order a distributive award on remand but has the discretion to determine the appropriate means of distribution based upon its findings on remand addressing the presumption in favor of an in-kind distribution. Should the trial court determine the presumption of an in-kind distribution has not been rebutted or that Wife does not have "other sufficient liquid assets" to pay a distributive award, in its discretion it may also consider ordering sale of the marital home. *See Wall*, 140 N.C. App. at 308, 536 S.E.2d at 650.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

Judges ZACHARY and MURPHY concur.